## DANIEL H. TOLMAN
### v.
## JAMES H. SMITH ET AL.

*Sales—Shares of Stock—Fraud by Vendor—Remedy of Vendee.*

1. Where persons named alleged that they had been induced to purchase stock of another by his fraudulent representations, he can not be heard to say that the duty rested on them to suspect his veracity and that, therefore, their delay in finding out the fraud excuses it.

2. If the president of a bank, occupying a *quasi* fiduciary relation to his general customers, by deceit induces one of them to buy from him shares of stock at double their value, and retains them himself as security for a portion of the price unpaid, that customer may, by an action on the case, if not for money had and received, have the portion paid refunded.

[Opinion filed January 14, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding.

Tolman v. Smith.

Mr. JOHN G. HENDERSON, for appellant.

Messrs. HOFHEIMER & ZEISLER, for appellees.

GARY, J.  On the 10th day of September, 1886, the appellant being the president, and the appellees customers, of the Chicago Trust and Savings Bank, the former sold to the latter twenty shares of stock in it, at the price of $125 per share.  The par was one hundred.  They paid him $500 and gave their judgment note for the residue of the price, $2,000, reciting in it the pledge of the stock which was retained by the appellant as collateral security, with power to sell it on default of payment.  The appellees paid interest on the note to April 1, 1890, and on May 3, 1890, filed a bill in chancery to rescind the purchase.  Forthwith the appellant sold the stock held as collateral, for $1,500, and entered judgment on the note for $536 and costs.  On the application of the appellees that judgment was set aside, and they, by notice under Sec. 29 of the Practice Act of 1872, set up that they were induced to purchase the stock by false and fraudulent representations made by appellant; that the consideration for the note and the $500 that they had paid had failed, and asking judgment in their favor for the damages they had sustained.  That notice occupies four, and the evidence *pro* and *con*, thirty-seven pages of the printed abstract, each containing more matter than a page of this volume.  Eighteen instructions offered by the appellant were given and eight refused, and his argument fills forty pages.  It is plain that no complete and exhaustive review of this case can be made in an opinion of justifiable length.  The real issue was that presented by an instruction for appellees as follows:

" And if you believe, from the evidence in the case, that the plaintiff, D. H. Tolman, sold to the defendants twenty shares of the capital stock of the Chicago Trust and Savings Bank, at the price of $125 per share, that said defendants in consideration thereof paid $500 and made the note sued on for the balance, and that said Tolman, for the purpose of inducing said defendants to buy said stock, made to said defendants

fraudulent representations of material facts concerning said stock, which representations when made were false in material respects to the knowledge of the plaintiff, and that the defendants, believing them to be true, and relying upon the truth of the same, purchased said stock for the consideration above stated, then you are instructed to find the issues for the defendants, and assess their damages at the sum of $500, with interest at six per cent per annum from the 10th of September, 1886, to the present date."

It must be borne in mind that the appellees had never had possession of the stock certificates; the appellant had kept and disposed of them, so that there was nothing for the appellees to restore, or to account for the value of.

The negotiations between the parties began through the receipt by the appellees of a letter as follows:

"CHICAGO, Aug. 28th, 1886.

MESSRS. SMITH & PATTISSON. Gentlemen:—It has been decided at a meeting of the stockholders to increase the capital stock of this bank to $500,000. A limited amount of stock is offered at $125, and will be allotted according to receipt of subscription or proportionately to the whole amount of subscription received. As we have earned upward of $50,000 the first fifteen months, besides paying five per cent cash dividend the first six months, and three per cent quarterly since, I can recommend this investment as being one of the best purchases ever offered. We can pay handsome quarterly dividends, build up a surplus quickly, and the stock will materially advance in price.

Awaiting your advice, I am yours truly,

D. H. TOLMAN & Co."

By adding an earned surplus of $50,000 to the original capital of $250,000, and doubling the stock, the new stock was paid up only sixty per cent, and the principal contest is whether or not the appellant told the appellees that the stock was fully paid.

The appellees were not subscribers to the bank for shares of stock, but buyers from the appellant. If he made to them "fraudulent representations of material facts," they were that

Tolman v. Smith.

the stock was fully paid. No attempt is made to prove any other. As a witness in his own behalf, the appellant went beyond the transaction with the appellees, and said that he made no such statement to anybody. Although irrelevant, this assertion opened the door for the appellees to put in testimony contradicting it by a witness who had also bought fifty shares from the appellant, the necessary effect of which was corroborative in the minds of jurors of the testimony of the appellees themselves. Stolp v. Blair, 68 Ill. 541; Blewett v. Tregonning, 3 Ad. & El. 554; 1 Ph. Ev., Cow. & Hill, 617.

In addition to this testimony the record shows that the books of the bank, by a fiction, represented the stock as full paid; that is, the real $50,000 of surplus was credited to the capital stock account, making with the original capital $300,000, and then $200,000 more was credited to the account and charged to "subscription dividends," which is merely another name for what the street calls water. But little corroboration was needed to induce belief that some peculiar inducement must have been presented by the vendor of shares which he knew all about, to induce an ignorant purchaser to buy them at double their value, if that value were to be measured by the value of the tangible assets of the bank. Nor can the appellant be heard to say that any duty rested upon the appellees to suspect his veracity, either at the time of the sale, or any other time, and therefore the delay in finding out, excuses the deceit. We can not review the many cases cited.

It needs but little knowledge of law to reach the conclusion that if the president of a bank, occupying a *quasi* fiduciary relation to his general customers, by deceit induces one of them to buy from him shares at double their value, and retains them himself as security for the portion of the price unpaid, that customer may, by an action on the case, if not for money had and received, have the portion paid refunded; and in effect that is what has been done in this case on the notice.

Whether the deceit was perpetrated, was a question for the jury. The evidence is such that a court has no authority to declare it insufficient; the appellant has had a fair trial, and the judgment is affirmed.

*Judgment affirmed.*