## COULTER *v.* CLARK.

[No. 19,987. Filed March 20, 1903.]

FRAUD.—*Contracts.*—*Statute of Frauds.*—Representations made by a banker and business man, well known to plaintiff, that stock in a proposed corporation to which certain patent rights were to be transferred would be more valuable than any bank-stock, and that defendant proposed to join plaintiff in the purchase of the patent rights and the organization of a company, made for the purpose of inducing plaintiff to invest in such corporation, when in truth defendant was investing no money, but had a secret arrangement with the promoter whereby he was to receive his stock and a certain sum of money for inducing others to take stock in such concern are not within the statute of frauds (§6634 Burns 1901), and the contract thereby induced is voidable. *pp. 312–318.*

PAYMENT.—*Fraud.*—*Ratification.*—Where plaintiff executed his note for certain stock in a company, and paid same before discovering the fraud practiced upon him in inducing him to purchase the stock, such payment will not operate as a ratification of the transaction. *p. 318.*

From Fountain Circuit Court; *J. M. Rabb,* Judge.

Action by Jerome Clark against David A. Coulter. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*H. C. Sheridan,* for appellant.

*Joseph Claybaugh, N. P. Claybaugh* and *J. P. Gray,* for appellee.

Dowling, J.—This is an appeal from a judgment for damages for an alleged fraud practiced by the appellant as a promoter of the organization of a company for the manufacture, sale, and erection of a combined hedge and wire fence. The questions of law presented arise upon the rulings of the court sustaining each paragraph of the complaint, its refusal to render judgment for the appellant on the answers of the jury to questions of fact submitted to them, and the denial of a motion for a new trial.

The first paragraph of the complaint was, in substance, as follows: On June 20, 1895, the Indiana Hedge & Wire Fence Company owned the right, under letters patent issued by the United States of America, to manufacture, sell, and erect in Clinton county, Indiana, and elsewhere, an improvement known as a "growing hedge and wire fence," and was desirous of selling the right to make, sell, and erect such fence in said county. The appellant, who was a banker and successful business man of said county, and who was known to the inhabitants of said county, conspired and agreed with certain agents of the said Indiana Hedge & Wire Fence Company to induce the appellee and other citizens of said county to purchase from said company, for the sum of $12,500, the right to make, sell, and erect said fence in said county. In furtherance of said conspiracy, the appellant, with the other agents of said company, agreed to call upon the appellee, and to represent to him that the appellant was so convinced of the great value and availability of the said patent rights and of the said territory that he was ready and anxious to join with other citizens of said county in the purchase of said patent rights for said Clinton county at said price of $12,500, and to organize a corporation to be known as the Clinton County Hedge & Wire Fence Company, with a capital stock of $25,000, for the purpose of making, selling, and erecting such patent fence. The plan of such proposed organization was as follows: The persons forming said last-named cor-

poration were to execute their promissory notes to the said Indiana Hedge & Wire Fence Company, in consideration of the assignment of such patent rights for said Clinton county to the said Clinton County Hedge & Wire Fence Company. Thereupon, the last-named corporation was to issue to the persons so associated in it shares of its capital stock to the amount of $2 for every $1 of the sums for which their respective notes had been so executed to the said Indiana Hedge & Wire Fence Company. It was further agreed between the appellant and said other conspirators that the appellant should solicit the appellee and other citizens to join him in the purchase of said patent rights for said county, and that appellant should pretend that he was one of the joint purchasers of such patent rights, and was executing his notes for the same; but it was secretly agreed between the appellant and his co-conspirators that, if the appellant should succeed in inducing the appellee and said other citizens to purchase said patent rights from the said Indiana Hedge & Wire Fence Company, and to enter into said scheme, then the notes executed by the appellant for his share of the purchase money for said patent rights were to be returned to him by said Indiana Hedge & Wire Fence Company, and he was to receive $1,000 of the proceeds of the sale of such patent rights for his services. Pursuant to this scheme, the appellant and his co-conspirators called on the appellee and on other citizens, and represented that the patents were of great value; that they were worth $25,000; that the appellant was so convinced of their value that he was ready and anxious to go in with appellee and other citizens in the purchase of said rights at the price of $12,500, and earnestly solicited the appellee and others to join him in the said purchase, and in the organization of the said Clinton County Hedge & Wire Fence Company. Appellant assured the appellee and other citizens of said county that, in his judgment as a business man and financier, the stock of said proposed corporation would be more

valuable than any bank-stock, and that its dividends would pay the notes executed to the said Indiana Hedge & Wire Fence Company long before they became due. The appellee, having no knowledge of the facts, and believing the said representations, relied thereon, and, on September 10, 1895, entered into said agreement, and, along with twenty-three other citizens of said county, executed his two notes to said Indiana Hedge & Wire Fence Company, each in the sum of $250, payable at twelve and eighteen months after date, and the appellant, also, at the same time pretended to execute his notes to the said company for the same amount, and joined in causing the said Clinton County Hedge & Wire Fence Company to be organized, to which said patent rights were thereupon transferred by said Indiana Hedge & Wire Fence Company. The said Clinton County Hedge & Wire Fence Company issued to the appellee stock of the said company to the amount of $1,000. As soon as the said notes were issued to said Indiana Hedge & Wire Fence Company, and said last-named company transferred said stock to the appellee and the other persons executing said notes, appellant's co-conspirators caused the notes executed by the appellant to be handed back to him, and they paid to him $1,000 for his services in carrying out said scheme. The said patent rights for Clinton county were of no value, and said stock was worthless, as the appellant at all times well knew. Before the appellee discovered the fraud which had been practiced upon him, he paid his said notes. He was unable to reconvey said patent rights to said Indiana Hedge & Wire Fence Company, for the reason that, as a part of the said scheme of fraud, they were conveyed to the said Clinton County Hedge & Wire Fence Company, and were beyond his control. The second paragraph of the complaint is similar to the first, and need not be set out.

The sufficiency of the facts stated in each paragraph to constitute a cause of action is questioned by the

demurrers. The objections. taken to each paragraph of the complaint are that the alleged representations made by the appellant related to the credit, conduct, and dealings of a third person, and that, as they were not in writing and signed by the appellant, they were within the statute, of frauds, and not actionable; that the alleged representations were expressions of opinion, merely, and not statements of material facts; that as the appellee had the opportunity to examine into the truth of the representations for himself, they will not support a charge of fraud; and that the pay-, ment of his notes by the appellee after knowledge of the fraud amounted to a ratification of the transaction.

We think it entirely clear that the representations charged to have been made by the appellant to the appellee for the purpose of inducing him to participate in the purchase of the worthless patent rights and corporation stock were not such "representations concerning the character, conduct, credit, ability, trade or dealings of any other person," as are contemplated by §6 of the statute of frauds. §6634 Burns 1901, §4909 R. S. 1881 and Horner 1901; *Hodgin* v. *Bryant,* 114 Ind. 401; *Worley* v. *Moors,* 77 Ind. 567; *Breedlove* v. *Bundy,* 96 Ind. 319. The representations were made in pursuance of a conspiracy to obtain the notes and money of the appellee by fraud, entered into and carried into execution by the appellant and other persons. They were a material part and parcel of the general scheme, and they were made in connection with fraudulent and dishonest artifices which were calculated to deceive and mislead the appellee. The person making these fraudulent representations was a banker and a successful business man, possessing the confidence of the appellee and of the community in which he and the appellee lived. He expressly held himself out as a disinterested party, seeking for himself, and recommending to the appellee, a valuable and profitable investment. He declared that, in his judgment as a business man and financier, the stock of the proposed

corporation to which the patent rights were to be trans-
ferred, would be more valuable than any bank-stock. The
appellant professed to be so thoroughly satisfied as to the
success of this venture that he was eager to join the appellee
and other citizens in making the purchase of the patent
rights, organizing the Clinton County Hedge & Wire
Fence Company, and converting the patent rights into
the stock of that corporation. Having persuaded the
appellee to make the investment, the appellant went
through the form of executing his own notes in the
presence of the appellee and the other citizens he had
interested in the enterprise. He concealed from the
appellee and from the other purchasers of the patent
rights the fact that he had any connection with the
parties owning or controlling the patents, or that he
had arranged with them for a special advantage to him-
self, and for a valuable consideration for his efforts to pro-
cure an agreement from the appellee and his associates for
the benefit of the persons owning or controlling the patent
rights. At the time the representations were made by the
appellant, it is alleged that he knew they were false, and
that the patents were worthless and the stock of no value.
The appellant was not, as he professed to be, a disinterested
business man, seeking a safe and promising investment, but
he was the secret agent and tool of third parties to dispose
of their worthless property. Instead of engaging in the
proposed venture upon the same terms and footing as the
appellee, his notes were to be returned to him without pay-
ment, and he was to receive a bonus of $1,000 for his serv-
ices in inveigling his friends and neighbors. The conduct
of the appellant, as set forth in the complaint, was fraud-
ulent, and the contract thereby induced was voidable. The
case made in the complaint is readily distinguishable from
Cook v. Churchman, 104 Ind. 141. In the case at bar,
nothing was said concerning the character, credit, conduct,
ability, trade, or dealing of any person, but a conspiracy

was entered into by the appellant and others, the common purpose of which was to defraud the appellee and other citizens, and to obtain their notes and money.

Nor were the representations made by the appellant expressions of opinion, merely. The appellant stated that the patents were of great value; that for Clinton county alone they were worth $25,000, but could be secured for $12,500; and that he was anxious to join in the purchase. He declared, on his judgment as a business man and financier, that the stock of the proposed corporation would be more valuable than any bank-stock, and that its dividends would pay the notes executed by the appellee and his associates. These statements, it is averred, were made, with full knowledge of their falsity, for the purpose of inducing the appellee to execute his notes and join in the proposed undertaking. They were relied upon, and served the purpose for which they were intended. They purported to be founded upon the appellant's knowledge of the value of the patents, and in view of the standing and reputation of the appellant, and the business in which he was engaged, they were well calculated to deceive the appellee and the class of persons to whom they were made. In *Bish* v. *Beatty,* 111 Ind. 403, 407, it was held that a representation that certain notes were "as good as government bonds" was the statement of a fact. See, also, *Drake* v. *Grant,* 4 N. Y. Supp. 899.

It can not be said that the appellee had the opportunity to investigate the character and the value of the patents. Such an inquiry demanded peculiar skill and knowledge. It would have required time. It might have proved entirely fruitless. The advantages possessed by vendors of territorial rights under patents over intended purchasers have been recognized by the courts, and it has been held that the purchaser may rely upon the representations of the vendor, and that the rule of *caveat emptor* does not apply. *Iowa, etc., Heater Co.* v. *American, etc., Co.,* 32 Fed. 735, 739.

The views herein expressed concerning the effect of secret

agreements securing special advantages and profits to agents and promoters of corporations are fully sustained by many authorities. *Western Union Tel. Co.* v. *Union, etc., R. Co.,* 3 Fed. 1; *Chandler* v. *Bacon,* 30 Fed. 538-540; *Davenport* v. *Buchanan,* 6 S. D. 376, 61 N. W. 47; *Walker* v. *Mobile, etc., R. Co.,* 34 Miss. 245; *Coles* v. *Kennedy,* 81 Iowa 360, 46 N. W. 1088, 25 Am. St. 503; *Tolman* v. *Smith,* 43 Ill. App. 562.

It is averred that the appellee paid his notes before his discovery of the fraud which had been practiced upon him. Payment under such circumstances could not operate as a ratification of the transaction. The fraud did not consist in the failure of the Clinton County Hedge & Wire Fence Company to make and sell its fences, but in the methods by which the appellee was induced to execute his notes and to become a stockholder in that corporation. It does not appear from the complaint that the appellee knew when he paid his notes, or that he had the means of knowing, that the appellant and others had conspired to cheat and defraud him, that the appellant understood that the patents were worthless, or that there was a secret agreement between the appellant and the persons interested in the sale of the territory covered by the patents that the appellant was not to pay his notes, and was to receive $1,000 for disposing of the patent rights.

We are of the opinion that each paragraph of the complaint was sufficient, and that the court did not err in overruling the demurrers to them.

The reasons urged by counsel for appellant in support of the motion for judgment in favor of appellant on the answers of the jury to the questions of fact submitted to them are those assigned in argument to sustain the proposition that the facts stated in the complaint are not sufficient to constitute a cause of action, and what has been said upon that branch of the case renders further discussion unnecessary. For like reasons the objections to instructions num-

bered one, two, and three given by the court are not well taken, and upon the same ground instruction numbered twelve, asked for by appellant, was properly refused.

The motion for a new trial was founded upon the same views of the evidence as were urged against the complaint, and which we have held erroneous. The assessment of damages was not too large.

We find no error. Judgment affirmed.