## JUDY v. JESTER ET AL.

[No. 7,775.   Filed December 11, 1912.   Rehearing denied March
14, 1913.]

1.  APPEAL.—*Questions Presented.*—*Sufficiency of Complaint.*—*Findings and Conclusions of Law.*—The exceptions to the conclusions of law present the same questions as the overruling of the demurrer to the complaint, where the facts have been fully and correctly found within the issues.  p. 84.

2.  HUSBAND AND WIFE.—*Conveyances.*—*Release of Wife's Inchoate Interest.*—*Presumptions.*—A wife's release of her inchoate interest in her husband's land may be a valuable consideration for a promise to her; and it will be presumed, in the absence of any agreement to the contrary, that the inducement for her releasing such inchoate right by joining the husband in a conveyance of his land, as to the grantee, was the consideration paid by the latter for the land conveyed.  p. 84.

3.  HUSBAND AND WIFE.—*Wife's Inchoate Interest in Husband's Lands.*—*Nature of Interest.*—The wife's interest in her husband's real estate is an estate in the land itself, and not a mere encumbrance resting upon it.  p. 85.

4.  PLEADING.—*Complaint.*—*Sufficiency.*—*Parties.*—Notwithstanding the liberal construction given to §263 Burns 1908, §262 R. S. 1881, providing that all persons having an interest in the subject of the action and in obtaining the relief demanded shall be joined as plaintiffs, the complaint must state a cause of action in favor of all the plaintiffs and must show that they have a common grievance and are each interested in the relief asked, or in some part of it, although their interests in the judgment need not be the same or equal.  p. 85.

5.  FRAUD.—*Conveyance Obtained by Fraud.*—*Action for Damages.*—*Complaint.*—*Parties.*—*Husband and Wife.*—A complaint alleging facts showing that a husband was defrauded out of land, the title to which was in his name, and in the conveyance of which his wife joined, shows such an interest in the wife as makes her a proper party plaintiff with her husband in a suit to recover damages for such alleged fraud.  p. 85.

6.  FRAUD.—*Representations of Value.*—Although representations as to value are not ordinarily sufficient to support a charge of fraud, where the vendor of real estate assumes to have special knowledge of the value of the property, and knows that the vendee is ignorant of the value and inexperienced, and that he is trusting entirely to the good faith and judgment of the vendor, the vendor's representations of value, made under such circumstances

as the basis for a contract between the parties, may be regarded as representations of material facts. p. 86.

7. FRAUD.—*Fraudulent Representations.—Complaint.—Sufficiency. —Findings.*—In an action for damages for fraud perpetrated in an exchange of real estate, where the allegations of the complaint, and the findings of fact in support thereof, showed that defendant stated that his land was first class agricultural land, composed of black loam with a clay subsoil and was suitable for the raising of all kinds of grain, that the whole farm was as good as the small portion pointed out to plaintiff, that the soil was as deep and as good and of the same quality as that of a farm previously examined by plaintiff, and as good in every particular, and that the farm had deep and productive soil over all its surface except about three acres, and that the statements were knowingly and falsely made for the purpose of defrauding plaintiff, fraud was sufficiently shown. p. 87.

8. FRAUD.—*Reliance on Fraudulent Representations.*—While one may not rely upon the truth of a statement which he knows to be untrue, or which is manifestly false, he may rely on the express statement of an existing fact, the truth of which is unknown to him, but which is asserted by the other party as a basis for mutual agreement. p. 87.

9. FRAUD.—*Reliance on Fraudulent Representations.—Negligence of Party Defrauded.*—Where it was shown that plaintiff was taken into a section of country in which he was unacquainted, that his credulity, ignorance of values and inexperience were known to defendant, that after looking at one farm with a view of trading for it defendant took him to another which he only casually observed with no idea or intention of purchasing, that on the way back to the station defendant made representations as to the latter farm and of helpful advice given to other persons in similar transactions, and thus induced the plaintiff to suggest a trade for the latter farm, that they were travelling in the night, and that early the next morning plaintiff was at home sixty miles away, but that he was still under the influence and domination of defendant, and without convenient means to learn the facts for himself, it cannot be said as a matter of law that he was so negligent as to bar his right to recover for the fraud practiced on him. p. 88.

10. FRAUD.— *Fraudulent Representations.—Liability.*—Defendant in an action for damages for fraud practiced on plaintiff in the exchange of real estate, cannot escape liability, where he assumed to know the facts and made false statements of material matters to induce plaintiff to make the trade, knowing that the statements were false and that plaintiff was relying upon their truthfulness, and by his management, connivance, trickery and

overpowering influence, induced plaintiff to rely on same and prevented him from investigating to ascertain the facts. p. 88.

11. EVIDENCE.—*Presumptions.—Failure to Produce Evidence.*— Where a party to an action has at his command testimony presumably favorable to himself, his failure to produce the same warrants the presumption that such testimony if produced would be unfavorable to him. p. 89.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by William P. Jester and another against John F. Judy and another. From a judgment for plaintiffs, the defendant, John F. Judy, appeals. *Affirmed.*

*Stansbury & Billings, Wilson & Quinn* and *Sheridan & Gruber,* for appellant.

*Will R. Wood* and *Thompson & McAdams,* for appellees.

FELT, J.—This is an action for damages, brought by appellees against appellant and one Isaac Alonzo Barkhurst for alleged fraud in the exchange of certain real estate. The complaint is in two paragraphs. A separate demurrer for want of facts was filed to each paragraph and overruled. Issues were joined by a general denial. Upon motion the cause was venued from the Tippecanoe Superior Court to the Clinton Circuit Court where the case was tried by the court. A special finding of facts was duly made and conclusions of law stated thereon in favor of appellees for $2,707; that appellee Elizabeth Jester had an inchoate interest in the Tippecanoe County real estate; also that the law was with said Barkhurst and that he have judgment against appellees for his costs. A motion for new trial was overruled; the court rendered judgment against appellant in favor of appellees and this appeal was prayed and granted.

The errors relied upon for reversal are: (1) The overruling of the demurrers to each paragraph of the complaint; (2) neither paragraph of the complaint states facts sufficient to constitute a cause of action against appellant; (3) error of the court in its conclusions of law; (4) the overruling of appellant's motion for new trial. The complaint is ex-

tremely long, and in substance charges in each paragraph, that appellees were husband and wife; that on November 9, 1906, and prior thereto William P. Jester was the owner in fee simple of 117 acres of real estate in Tippecanoe County, Indiana, of the value of $100 per acre, on which there was a mortgage for $5,860; that at said time appellant, owned a large amount of land in Starke County, Indiana; that appellant for the purpose of cheating and defrauding said appellee out of said land in Tippecanoe County, pretended and represented to him, that said lands in Starke County were all first class agricultural lands, composed of black loam, with a clay subsoil, and suited to the raising of all kinds of grain; that in furtherance of his said scheme to cheat and defraud said Jester out of his land, appellant induced him to go to Starke County with him and when there took him upon a portion of his land which appeared to said Jester to be the kind of land represented to him by appellant; that before leaving said lands appellant expressed a desire to go to another tract, which he claimed to own, for the purpose of seeing some tenants living thereon, and invited Jester to go along, which he did; that while upon said last-mentioned tract of land appellant in furtherance of his scheme to cheat and defraud appellee out of his said lands called his attention to a small portion of the land in their immediate presence and said to him that said lands were the most fertile in all northern Indiana, and the entire tract of 210 acres, was similar to and as good as the land in their immediate presence, and was worth $75 per acre; that after leaving said lands and on their way back to the town of North Judson, Indiana, appellant proposed to trade his said 210 acres of land for the land of Jester in Tippecanoe County; that this was the first information of the desire or intention of appellant to trade said lands that appellee received; that in conversation with reference to said trade, appellant repeatedly represented said 210 acres to be first class land, fit in every particular for raising all kinds of grain; that all of it was as

good as that upon which they were at the time Jester's attention was called to the soil; that appellant in furtherance of his scheme to cheat and defraud appellee proposed to sell him said 210 acres of real estate upon the following terms: appellee to assume and pay a mortgage thereon of $4,400 and to execute to appellant a purchase money mortgage upon said land for $5,129.75, due ten years after date, interest payable annually at six per cent; appellee, Jester, his wife joining him therein, to sell and convey, by warranty deed, to appellant his said lands in Tippecanoe County, subject to the mortgage thereon for $5,868. As a further consideration said Jester was to sell and deliver to appellant all his personal property at the time, upon his land in Tippecanoe County, except the corn, of the value of $1,000; that appellee believed said representations to be true and relied upon the same, and being deceived thereby, entered into a written contract, on November 9, 1906, with appellant upon the terms aforesaid; that the trade was thereafter carried out and warranty deeds executed as agreed by the parties, which appellees were induced to execute by the fraud of appellant aforesaid; that between the date of said contract and the execution of the deeds, appellee had no opportunity to examine said lands which were situate about 70 miles from his home; that he relied upon and believed said representations made by appellant to be true with reference to the character and value of said land; that in truth and in fact at the time said contract was made and the deeds executed, said Starke County lands were not worth over $10 per acre; that the soil was not fit and suitable for agricultural purposes as represented by appellant and was not over the entire tract as shown to appellee at the place and time they visited the farm, and there was not over two or three acres of such soil; that the remainder of the 210 acres was practically worthless for agricultural purposes, was composed of quicksand, there was no clay subsoil and no black loam on top as represented by appellant; that appellee Jester was not aware of said fraud

practiced upon him until some weeks after the trade had
been consummated, and not until he went to the place in
the winter of 1906 with a gentleman who desired to rent
the farm; that he immediately thereafter called upon ap-
pellant and demanded of him a rescission of the contract and
a reconveyance of said properties, which demand was refused
by him; that at this time appellant said he would aid and
assist appellee in making a good trade of the Starke County
lands; that appellant conspired with one Alonzo Barkhurst
to further cheat and defraud appellee, by obtaining from
him, said Starke County lands at a time when said Jester
was in a distressed state of mind by reason of his disappoint-
ment occasioned by the fraud already practiced upon him by
appellant; that for the purpose of carrying out his design to
defraud appellees out of said lands in Starke County, appel-
lant transferred four town lots to one Courtwright, the said
Courtwright pretending to exchange said town lots for five
tracts of land in Georgia, containing in all 2,450 acres; that
in order to conceal his identity in the transaction, appellant
caused the deed for the lands in Georgia to be executed to
Alonzo Barkhurst and appellant then caused Barkhurst to
approach Jester and propose a trade of said Georgia lands
for his Starke County farm; that said Barkhurst had no
interest in said land but was acting for and on behalf of ap-
pellant, and so acting did approach appellee and represented
that the Georgia land was worth $10 per acre and that the
title was good in him, and presented an abstract, which did
show title as represented; that appellant offered to assist
appellee in said trade and examined said abstract and pro-
nounced the title good, and representing that he was a friend
to appellee, advised him to make the trade, and said he was
well acquainted with the men who had conveyed the land
to Barkhurst and that in his opinion it was an elegant trade
to make; that he had some knowledge of the land in Georgia;
that appellee relied upon said statements and representations
of appellant and said Barkhurst and believed them to be

true, and acting upon the same, he and his wife entered into a contract to make said trade; that thereafter, on May 4, 1907, warranty deeds were executed between said parties conveying said properties; that appellees sent their deed to the proper office in Clinton, Georgia, for record, and thereupon discovered for the first time the fraud that had been practiced upon them with reference to the Georgia lands; that the abstract presented to them was false, forged and counterfeited; that appellant through the instrumentality of said Barkhurst pretended to convey said lands to appellees when in fact they never belonged to Barkhurst, to appellant, or their pretended grantors; that appellant had full knowledge of all said facts and circumstances, knew the title to said Georgia land was not in Barkhurst and was fraudulent; that said lands were not as represented, and knowingly and fraudulently conspired to cheat and defraud appellees out of their said lands by the means aforesaid; that when confronted with the facts relating to the fraud so practiced upon appellees with reference to said Georgia land appellant again offered to assist appellees to dispose of the said lands but appellees refused to attempt so to do; that appellees by reason of said fraud and conspiracy have been damaged in the sum of $8,000. Prayer that said mortgage notes given by appellees as aforesaid be canceled, that appellees recover damages in the sum of $8,000 and that the judgment be declared a lien upon said land in Tippecanoe County, Indiana, and for all proper relief.

The court found the facts substantially as alleged in the complaint and the details thereof need not be stated here, but among them are the following: that the business of appellee, William P. Jester, was and for many years had been that of a carpenter and builder; that appellant is a trader and money lender, and a dealer in real estate and personal property; that appellee's 117 acres of real estate in Tippecanoe County were of the value of $65 per acre; that appellee on November 9, 1906, owned personal property

of the value of $800; that the value of the 210 acres in Starke County does not exceed $25 per acre; that on November 6, 1906, at the request of appellant, appellee, William P. Jester, went with appellant to Starke County, Indiana, to look at a farm of 240 acres, which he proposed to trade for appellee's said 117 acres; that said Jester had never before been in Starke County and knew nothing of the quality, condition and value of farm lands in that county; that they inspected said farm of 240 acres and examined the soil by digging into it and by other means of observation at more than a dozen places and said Jester did not know that appellant owned or claimed to own any other land in said county; that in the afternoon of said day appellant said he wished to go to another farm some three miles distant, and see his tenant and requested appellee to accompany him which he did; that when they reached said farm which contained 210 acres; appellant drove across the farm, conversed with his tenant and then called appellee's attention to the fine soil of a small tract of plowed ground; that appellee was not out of the buggy while on said farm except to open a gate and made no examination of the buildings or land except as above shown and at the time had no thought or intention of purchasing the farm; that after leaving said farm and while driving back to the railroad station appellant told appellee a great many things about his business and his favorable treatment of all those who dealt with him and that all those who took his advice had prospered, and offered to trade him the farm of 210 acres; that thereupon said Jester asked appellant for his advice about the land, told him he was inexperienced in trading in farm lands and stated that he would place himself entirely in his hands and rely upon his judgment, and then asked his advice about trading for the 210 acres instead of the 240 acres they had examined; that appellant told him it would be the best trade for him to take the 210 acres; that it was as good in every particular as

the 240-acre tract; that the soil was just as good and as deep as that of the farm they had examined; that it was of the same quality and equally as suitable for agricultural purposes; that it was all as good as the portion he had pointed out to appellee. The court also found that appellant had the full confidence of said appellee at that time and the latter was easily influenced which fact was known to appellant; that appellant represented the farm to have a deep and productive soil over all its surface except three acres around the buildings and to be of the value of $75 per acre, which facts were relied on and believed by said appellee; that they started on their journey from Lafayette at 2 a. m. on November 6, and returned home at 3 a. m. of the next day and at 7 a. m. appellant came to the home of appellee to proceed to look at the 117-acre farm, and shortly thereafter signed a written contract to trade on the terms proposed by appellant; that the soil of said 210 acres was not as good as the soil of the 240 acres shown to said appellee which fact was well known to appellant; that the soil of said 210 acres was composed largely of quicksand and more than two-thirds of it was sandy and had a top soil but two or three inches 'in depth; that not to exceed 25 acres was as good as the soil of the 240 acres and suitable for farming purposes; that said appellee in March, 1907, visited said farm for the first time after purchasing the same; that during all said time he relied on the representations of appellant as to the depth and character of the soil and the value of said land and believed the facts to be as represented by appellant; that said representations were false and known by appellant to be false when made and were made for the purpose of deceiving said appellee and defrauding him out of his said farm; that appellees resided in West Lafayette, Tippecanoe County, Indiana, and said 210 acre farm was situate sixty miles from that place; that appellee made no further investigation as to the character of the soil after trading for said farm until his visit there in March when he

and his prospective tenant examined the same and found it to be as above stated; that "said William P. Jester is not a strong man physically, is possessed of a quiet, unassuming and confiding disposition and is easily influenced, and was easily influenced and pursuaded by said John F. Judy, and that the statements and representations made by the said Judy, taken in connection with the disposition of the said Jester, his physical strength and want of experience, was such as to and did in fact deceive and mislead the said Jester and over-pursuaded him to believe and accept as a fact the false and fraudulent statements and misrepresentations made by the said Judy to the said Jester as above found."

The court then finds the facts in much detail to the effect that the transaction relating to the Georgia land was a sham inspired and directed by appellant; that the other persons who appear therein were his agents and tools and all the dealings and representations were fraudulently made to avoid the effect of the fraud in the first deal and to deprive appellees of all their property; that as soon as said Barkhurst obtained the deed of appellees for said Starke County land he immediately conveyed the same to appellant; that said William P. Jester relied upon appellant, believed his statements in regard to said lands and made the trade upon his representations and advice; that appellant knew all the facts, that his statements and those made by his agents and coconspirators were false and fradulent and were made for the purpose of cheating and defrauding appellees out of their property.

The questions relating to the sufficiency of the complaint and the conclusions of law may properly be considered together. Two principal propositions are relied upon by appellant: (1) The complaint states no cause of action in favor of appellee, Elizabeth Jester, and is therefore insufficient, as to both appellees suing jointly; (2) the complaint proceeds upon the theory of fraud and the facts alleged are insufficient to show actionable fraud against appellant.

Where the court has made a special finding of facts
1.   and stated its conclusions of law thereon, to which
the appellant has duly excepted, if the facts are fully
and correctly found within the issues, the exceptions to the
conclusions of law present the same questions as the over-
ruling of the demurrer to the complaint.   *Timmonds* v. *Tay-
lor* (1911), 48 Ind. App. 531, 96 N. E. 331; *Town of Cicero*
v. *Lake Erie, etc., R. Co.* (1913), 52 Ind. App. 298, 97 N. E.
389, 393.   There is no contention here that the facts are not
fully and correctly found, but appellant contends that the
facts found are insufficient to warrant the conclusions of
law.   The complaint charges, and the facts found show, that
appellees were husband and wife; that by the fraudulent
transactions alleged they lost whatever interest they had in
the 117 acres of real estate in Tippecanoe County and eight
hundred dollars worth of personal property and received
nothing therefor.   The liability arises from the fraud alleged
relating to the several transactions and is not to be deter-
mined by separating each transaction from the other.   The
theory of the complaint and the facts found, show that ap-
pellant by fraud and conspiracy pursued appellees through
the several transactions and until he had deprived them of
all their property.   Those who assisted in carrying out the
conspiracy were but his agents and tools.

On this state of facts the first question to be determined is
whether the inchoate interest of the wife in her husband's
lands out of which he is so defrauded is such an interest as
to make her either a proper or necessary joint plaintiff with
her husband in an action for damages based upon such al-
leged fraud.   It has been held that the release by a wife of her
inchoate interest may be a valuable consideration for
2.   a promise to her.   Also, that when a wife joins with
her husband in the conveyance of his land, it will be
presumed, in the absence of any special agreement to the
contrary, that the inducement for the release of her inchoate

right, as to the grantee, was the consideration paid by the latter for the land so conveyed. *Fleming* v. *Reed* (1898), 20 Ind. App. 462, 468, 49 N. E. 1087; *Jarboe* v. *Severin* (1882), 85 Ind. 496, 498; *Worley* v. *Sipe* (1887), 111 Ind. 238, 12 N. E. 385. The wife's interest in her husband's real estate, in Indiana, is an estate in the land itself, and not a mere encumbrance resting upon it. *Tanguey* v. *O'Connell* (1892), 132 Ind. 62, 63, 31 N. E. 469; *Bever* v. *North* (1886), 107 Ind. 544, 8 N. E. 576; *Clements* v. *Davis* (1900), 155 Ind. 624, 632, 57 N. E. 905; *Frain* v. *Burgett* (1898), 152 Ind. 55, 66, 50 N. E. 872, 52 N. E. 395.

4. The statute (§262 Burns 1908, §262 R. S. 1881) provides that "All persons, having an interest in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs." This statute is to be liberally construed, but the rule still obtains that the complaint must state a cause of action in favor of all the plaintiffs. The grievance must be common to the several plaintiffs and each must be interested in the relief asked or some part of it, but it is not essential that their interest in the judgment be the same or equal. *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643, 647, 73 N. E. 625; *Larsen* v. *Groeschel* (1884), 98 Ind. 160. While the question

5. in the exact form presented here does not seem to have been decided in Indiana, kindred questions already decided considered in connection with our statute fully warrant the conclusion that a complaint alleging facts which show that a husband has been defrauded out of real estate, title to which was in his name, and in the conveyance of which his wife joined, shows such interest in the wife as makes her a proper party plaintiff with her husband in a suit to recover damages for such alleged fraud. *Staser* v. *Gaar, Scott & Co.* (1907), 168 Ind. 131, 79 N. E. 404; *Staser* v. *Garr, Scott & Co.* (1906), 38 Ind. App. 696, 78 N. E. 987; *Lake Erie, etc., R. Co.* v. *Priest* (1892), 131 Ind. 413, 31

N. E. 77; *Tanguey* v. *O'Connell, supra; City of New Albany* v. *Lines* (1899), 21 Ind. App. 380, 386, 51 N. E. 346; *Simar* v. *Canaday* (1873), 53 N. Y. 298, 304, 13 Am. Rep. 523.

Appellant also asserts that the facts relied on to show fraud amount only to an expression of appellant's opinion as to the value of the land and further that appellee William P. Jester had the opportunity to ascertain for himself the quality and value of the Starke County land, and if he failed so to do, his charge, that he was deceived, will not avail because of his negligence. Representations as to value 6. are not ordinarily sufficient to support a charge of fraud, but under some circumstances such representations are affirmations of fact. If the vendor of real estate assumes to have special knowledge of the value of the property and the vendee is ignorant of the value and inexperienced in such transactions, and these facts are known to the vendor, who also knows that the vendee trusts entirely to his good faith and judgment as to value, representations of value made under such circumstances as the basis of a contract between the parties may be regarded as representations of material facts. *Manley* v. *Felty* (1896), 146 Ind. 194, 199, 45 N. E. 74; *Culley* v. *Jones* (1905), 164 Ind. 168, 171, 173, 73 N. E. 94. In *Culley* v. *Jones, supra,* on pages 172, 176 it is said: "Whether such representations as to value are merely the expressions of an opinion, or affirmations of facts to be relied upon, is a question of fact to be determined by the jury. * * * And where they are fraudulently made of particulars in relation to the estate which the vendee has not equal means of knowing, and where he is induced to forbear inquiries which he would otherwise have made, and damage ensues, the party guilty of the fraud will be liable for the damage sustained. * * * Whether the alleged representations were such as appellant had the right to rely upon, or whether they were reasonably calculated to deceive such a person as appellant, were questions of fact for the jury. * * * 'The design of the

law is to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves.' ''

See, also, *Simar* v. *Canaday, supra,* 306.

But the charge in the complaint and the finding of facts go much farther than a mere statement of value. It is found that appellant stated that the farm of 210 acres

7. was first class agricultural land, composed of black loam with a clay subsoil and was suitable to the raising of all kinds of grain; that the whole farm was as good as the small portion pointed out to said appellee; that the soil was as deep and as good and of the same quality as that of the 240 acres, and the farm was as good in every particular as the one he had examined for himself; that it had a deep and productive soil over all its surface except about three acres. These are material representations of existing facts charged in the complaint and found by the court to have been made knowingly and falsely for the purpose of defrauding appellees. The complaint therefore was not insufficient nor the conclusions of law erroneous because of the absence of material facts showing fraud. *Boltz* v. *O'Conner* (1910), 45 Ind. App. 178, 183, 90 N. E. 496; *Harris* v. *McMurray* (1864), 23 Ind. 9; *Norris* v. *Tharp* (1878), 65 Ind. 47; *Jones* v. *Hathaway* (1881), 77 Ind. 14, 21; *Bish* v. *Beatty* (1887), 111 Ind. 403, 407, 12 N. E. 523; *Coulter* v. *Clark* (1903), 160 Ind. 311, 315, 66 N. E. 739; *Loucks* v. *Taylor* (1899), 23 Ind. App. 245, 249, 55 N. E. 238; *Kramer* v. *Williamson* (1893), 135 Ind. 655, 660, 35 N. E. 388.

In *Manley* v. *Felty, supra,* on page 198 it is said: ''Upon the question of diligence, it has been settled that a contracting party may rely on the express statement of an

8. existing fact, the truth of which is unknown to him, but which is asserted by the other contracting party, as a basis for mutual agreement. * * * Of course, this proposition must be regarded in the light of another which

is equally well settled, that one may not rely upon the truth of a statement which he knows to be untrue, or which is manifestly false." See, also, *Cully* v. *Jones, supra,* 171; *Leonard* v. *Springer* (1902), 197 Ill. 532, 538, 64 N. E. 299.

In this case the facts show a fraudulent conspiracy to cheat appellees out of their land. Appellee William P. Jester was taken into a section of country with which he was wholly unacquainted. This fact, his credulity, his ignorance of values and inexperience were known to appellant. He was shown one farm with a view of trading for it and then taken to another which he only casually observed with no idea or intention of purchasing it. In view of subsequent events the conclusion is inevitable, and the proof sufficient to show, that appellant employed this plan as a part of the means by which said appellee was induced to trade for the 210 acres without learning its true character or value. He had left the farm and was on the way back to the station to take his train for home before the trade was suggested. He heard the self-praise of appellant, his alleged helpful advice to others in similar transactions and fell into the trap so adroitly set for him. They traveled in the night and early next morning said appellee was at home sixty miles away from the farm, but still under the influence and domination of appellant. There was then no convenient means by which he could learn the facts for himself. The knowledge he obtained first hand was inadequate and deceptive. It cannot be said as a matter of law that his negligence was such as to bar his right of recovery for fraud practiced upon him. Appellant assumed to know the facts and made his statements for the purpose of inducing appellees to part with their land, knowing that they were ignorant of the facts and relying implicitly upon him for a true representation of the farm. He knowingly and purposely deceived them. He cannot now escape from the consequence of such conduct for two reasons: (1) Because he assumed to know the facts and

made false statements of material matters to induce appellees to make the trade, knowing at the time that they were false and that appellees were relying upon him for the truth. (2) Because by his management, connivance, trickery, and overpowering influence, appellees were prevented from making an investigation to ascertain the facts for themselves, and induced to rely upon his representations.

Upon the whole record the case seems to have been fairly tried and a correct result reached. While it is the privilege of the defendant to rely upon the weakness of the plaintiff's case and not to testify in his own behalf, in view of the serious charges of fraud and misrepresentation made against appellant, the truth or falsity of which must have been known to him, it is at least remarkable that he failed to testify and enlighten the court by his version of the transactions. Where a party has in his own keeping and at his command, testimony presumably favorable to him, his failure to produce such testimony warrants the presumption that the testimony if produced would be unfavorable to him. *Indiana Union Traction Co.* v. *Scribner* (1911), 47 Ind. App. 621, 631, 93 N. E. 1014; *Lee* v. *State* (1901), 156 Ind. 541, 548, 60 N. E. 299.

The appellant has pointed out no available error. The case presents many facts which show a flagrant disregard of the principles of fair and honest dealing and a wilful and persistent design to defraud. The apparent credulity and helplessness of appellees while under the influence of appellant instead of excusing his conduct, under all the facts of the case, only add to the enormity of such conduct, which should be discouraged by all available means. The judgment is therefore affirmed with ten per cent damages.

Ibach, C. J., Hottel, Lairy and Adams, JJ., concur. Myers, J., concurs in result but dissents to assessment of penalty.

NOTE.—Reported in 100 N. E. 15. See, also, under (1) 2 Cyc. 718; (2) 14 Cyc. 952, 956; (3) 14 Cyc. 924; (4) 31 Cyc. 103; (5)

20 Cyc. 94; (6) 20 Cyc. 51; (7) 20 Cyc. 59; (8) 20 Cyc. 33; (9) 20 Cyc. 32, 57; (10) 20 Cyc. 61; (11) 16 Cyc. 1059. As to what false representations in respect of value give vendee a suit against vendor, see 18 Am. St. 555; 15 Am. Rep. 382.