SMITH ET AL. *v.* VINCENT ET UX.

[No. 13,484.   Filed December 20, 1929.]

*Howard L. Townsend, Albert E. Thomas* and *Harry H. Hilgemann,* for appellants.

*Plummer & Plummer* and *Gochenour & Graham,* for appellees.

McMAHAN, J.—Complaint by Henry C. and Mary Vincent, who are husband and wife, against Frank R. Smith, Sam Baird and Ed Christle, to recover damages for fraudulent representations alleged to have been made by the defendants in an exchange of lands. The facts were found specially and are, in substance, as follows: Henry C. Vincent, herein referred to as "appellee," was the owner of a 277-acre farm in Wabash county; he was 67 years old, and his wife 60; he was reared on a farm; after he reached his majority, he resided in Benton and Jasper counties, changing his location by selling and buying three or four farms in these counties and thus becoming acquainted with the soil common to that region; in 1901 he purchased 240 acres in Wabash county, and in 1910 he added 37 acres to that farm; the soil on this farm was black loam and similar to the soil of the lands he had theretofore owned; Smith was the owner of two tracts of land in Michigan, one containing 60 acres and mortgaged for $3,000, the other containing 40 acres and mortgaged for $2,000; he owned 100 acres in Ohio, mortgaged for $5,000; he also owned a note given by Patrick Lynch for $9,046, secured by a second mortgage on 210 acres of land in LaGrange county, the first mortgage on that land being for $12,000; appellee, desiring to sell his Wabash county

land, employed Christle as his agent to find a purchaser, or one with whom an exchange could be made; Christle had been in the real estate business for more than 20 years and had been well known to appellee for 10 years; appellee had confidence in the honesty and integrity of Christle and believed he would serve him faithfully and that his counsel could be relied on; Baird was also a real estate dealer in the city of Wabash and skilled in that business; although only slightly acquainted with Baird, who had theretofore acted for him in another real estate transaction, appellee believed Baird to be honest and that his advice could be relied on.

Baird was employed by Smith to assist the latter in disposing of his lands and the Lynch note, such employment being unknown to appellee, who believed Baird was acting as his agent in conjunction with Christle, and, so believing, appellee relied on him in the transactions concerning the sale and exchange of said land. Smith, for more than 25 years had been actively engaged in the real estate business and had done a large business in the sale, purchase, and exchange of real estate in the north part of Indiana, the south part of Michigan and the west part of Ohio, and knew the kind and nature of the various soils in such localities, their fitness for farming purposes, the character of the soil on the lands so owned by him, and the value of said lands. He was vigorous in body and mind, forceful and persuasive in manner, shrewd in business transactions, and for several years had been located at Fort Wayne.

Appellee's knowledge was only such as was acquired by a farmer within Benton, Jasper and Wabash counties. His mind worked slowly and was not able to grasp and hold many things at one time. He was inclined to be trusting and confiding and not to rely upon himself in important transactions. Mrs. Vincent had only such experience as comes to a housewife in a farm home and

was unable to form any reliable judgment as to the nature or value of real estate for any purpose.

During the time in question, Charles Vincent, a son of appellee, lived with his parents and was between 25 and 30 years of age. He had only such knowledge as comes to a boy working on the farm with his father and was not qualified to advise his parents as to what was the best thing to do in a real estate transaction. The three defendants conspired together for the purpose of cheating the plaintiffs by persuading them to convey their lands to Smith and to take in exchange therefor the lands in Ohio and Michigan and the said note owned by Smith. In pursuance of said conspiracy, Baird and Christle informed Vincent that Smith owned said lands and note and would exchange them for the Wabash county farm; that Smith was honorable and truthful and that appellee could rely on all he said. Christle and Baird introduced appellee and his wife to Smith, who, in pursuance of such conspiracy, made certain false statements concerning his lands as to the value, soil and productivity of the same, and that he would, within a year, sell such lands for appellee at a named price. He also made certain false statements concerning the Lynch note, the financial reliability of Lynch, the value of the land mortgaged to secure that note and that Lynch was about to, and would, within a short time, sell his land and pay off the $9,046 note, and that, with the money so obtained, appellee could pay off the mortgages on the Michigan and Ohio lands. Plaintiffs believed said statements, and, relying thereon, entered into a contract with Smith in which they agreed to exchange the farm in Wabash county for the Michigan and Ohio lands and the Lynch note. Later, the parties exchanged deeds, each conveying to the other the lands as provided in such contract. In the time intervening between the latter part of February, 1925, and April 8, 1925, the day on

which said contract was entered into, appellee visited and looked over the Michigan and Ohio land, the first of said visits being made in February, on which occasion appellee was taken to the land in LaGrange county and given an opportunity to go over and inspect the same, the Michigan land at that time being covered with snow so that no reliable inspection could be made. Four days later, the three appellants took appellee and his son to the Michigan land where they walked out on the land to a point where a superficial view could be had. On this occasion, a spade was procured with which the soil was dug into to see, as far as possible, its depth and quality. On the next day, they were taken to the Ohio land, where they were permitted to make as full an inspection as they were capable of making. Later, appellants took appellee, his wife and son to the Michigan land, where the same kind of an inspection was again made. From there they were taken to the Ohio land, where they made the same kind of inspection as on the preceding visit. No crops were growing on the Michigan land at the times of said inspections, and there was no way for appellee to determine the character of crops the land would produce. For such information he had to and did rely on the representations of Smith.

Appellee had never been in Michigan prior to said visits. The soil on the Michigan land was different from the soil on any land with which appellee was familiar and his experience did not qualify him to form a reliable judgment on the subject. The soil on the Michigan land required special treatment in order to render it reasonably productive. The soil on the Ohio land was a heavy clay, drainage slow, and the raising of crops thereon uncertain. A knowledge of such land could be gained only by experimenting and could not be obtained by an inspection. Smith had had a long experience with said soil and so informed appellee, who, having confidence

in Smith, relied upon him as to the nature of said soil. Appellee was not able, because of inexperience, to form any reliable judgment of such soil by what was revealed by digging. Each of the defendants knew appellee was ignorant of the nature of said soils and that he was relying on them for correct information. It is further found that the representations made concerning the said lands and Lynch, and concerning the note given by him, and the value of the land securing the note, were false; that the equity in one of the Michigan tracts of land was $1,200 and the other Michigan tract was worth less than the amount of the mortgage thereon; that the Ohio land was worth $4,000 more than the amount of the mortgage and that the Lynch note was worth only $3,000; that at that time the land owned by appellee in Wabash county was worth $38,780, the equity therein over the mortgage liens being of the value of $24,055; that the value of all appellee received for his said equity was $11,200, and that, by reason of said false representations, appellee has been damaged in the sum of $12,855.

Upon these facts, the court concluded as a matter of law that appellee should recover $12,855, and judgment followed such conclusion.

Did the court err in the conclusion? Without again setting out all of the facts as found by the court, we call attention to the fact that the three appellants entered into a conspiracy for the purpose of cheating appellee, by inducing him to transfer his land to Smith and to take in exchange therefor the said lands and note owned by Smith; that, pursuant to such conspiracy, Baird and Christle informed appellee that Smith would exchange such property for appellee's land; that Smith was honorable and truthful and that appellee could rely on all he said. Christle had been employed by appellee to act as his agent, and appellee believed that Baird was assisting Christle as his agent, when, in fact, Baird was acting

as the agent of Smith. Appellee had explicit confidence in Christle. Baird had, at one time, acted as agent for appellee in a real estate transaction and appellee believed him to be honest and trustworthy. Smith was a shrewd business man and had had many years experience as a dealer in real estate, while appellee had not had any great experience, and was inclined to be trusting and confiding and not to rely upon himself in important transactions. The two agents were instrumental in bringing about the meeting between appellee and Smith, after they had first caused appellee to believe he could rely on what Smith would say. They were active in taking appellee to see the lands owned by Smith; they stood by and heard Smith in his efforts to induce appellee to make the exchange; they and Smith knew appellee was ignorant of the nature of the soil on the Smith lands and that he was relying on them for correct information concerning such lands. The representations made by Smith were made in the presence of Baird and Christle. Such representations were false and by them known to be false. The land owned by appellee was good farm land and worth $38,780, the equity over the mortgage being of the value of $24,055, while that which he received from Smith in exchange therefor was worth only $11,200.

The facts found are sufficient to, and do, fully support the conclusion of law as stated by the court. The fact that appellee was given an opportunity to inspect and did inspect the lands owned by Smith, and that many of the statements of Smith in relation thereto related to values, do not make the conclusions of law erroneous. See *Klugo* v. *Ries* (1917), 66 Ind. App. 610, 117 N. E. 262; *New* v. *Jackson* (1911), 50 Ind. App. 120, 95 N. E. 328; *Judy* v. *Jester* (1912), 53 Ind. App. 74, 100 N. E. 15; *McCoun* v. *Shipman* (1920), 75

Ind. App. 212, 128 N. E. 683; *Romine* v. *Thayer* (1920), 74 Ind. App. 536, 128 N. E. 456.

Appellee was justified in relying upon the statements of Christle and Baird as to the honesty and trustworthiness of Smith. *Firebaugh* v. *Trough* (1914), 57 Ind. App. 421, 107 N. E. 301.

The salient and material facts found by the court are amply sustained by the evidence. The trial judge saw the witnesses, including appellee. He heard them testify, and was in a better position to draw inferences from what they said, and from their actions, demeanor and their intellectual capacity than we are. The evidence is sufficient to sustain the facts as found concerning the value of the property owned by Smith and the property which appellee exchanged therefor. This being true, the amount of the recovery was not too large.

Judgment affirmed.