Marc Edward ELLIS, Appellant–Respondent,

v.

Cherie Dawn ELLIS, Appellee–Petitioner.

No. 87A01–9909–CV–322.

Court of Appeals of Indiana.

June 13, 2000.

, J. William Bruner, Boonville, Indiana, Attorney for Appellant.

Charles L. Martin, Martin & Martin, Boonville, Indiana, Attorney for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-respondent Marc Edward Ellis ("Marc") appeals the trial court's division of marital assets upon his divorce from Cherie Dawn Ellis ("Cherie"). We affirm.

### Issue

The sole issue presented for our review is whether the trial court abused its discretion in dividing the parties' marital assets.

### Facts and Procedural History

Marc and Cherie married in 1992; Cherie petitioned for divorce on April 9, 1999. After a hearing, on June 18, 1999 the trial court entered a decree dissolving their marriage and dividing their property. The court found that that the parties' home had an estimated market value of $74,000 and secured indebtedness under two subsidized mortgages totaling $64,917.06 as of April 30, 1999; as such, the parties' equity in the home totaled $9,082.94.

The trial court awarded Cherie the marital home and assigned her the responsibility for the mortgage, payments on a jointly owned Dodge Intrepid ("the Intrepid"), which had a "negative value" of $520, and her individual debts.[1] Marc was awarded

---

1. Cherie presented evidence of debts she had paid during the separation totaling $4,014.81. After disallowing credit for car insurance, tags, and loan payments on the Intrepid and for payments she had made for her own dental work, the trial court assigned Cherie a "net credit" of $3,049.28 for the debts she had paid during the separation.

his own van, valued at $870. After the award to each party of his or her personal property, individually owned pension funds, and one-half of a joint savings account, the assets awarded to Cherie totaled $8,712.07, and those awarded to Marc totaled $7,706.76, the difference being $1,005.31. The trial court ordered Cherie to pay Marc $502.65 as "equalization" and ordered Marc to convey his interest in the home to Cherie upon receipt of that sum.

Marc timely filed a motion to correct error, claiming that the trial court erred in awarding Cherie ownership of the home, in allowing her credit for the bills she had paid during the separation, and in dividing the marital assets. The trial court denied Marc's motion.

### Discussion and Decision

■ When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision is clearly erroneous or constitutes an abuse of discretion. *Chase v. Chase,* 690 N.E.2d 753, 755–56 (Ind.Ct. App.1998). We will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of the marital property. *Id.*

### A. Marital Home

Marc first contends that because the parties had two subsidized home mortgage loans, the portion of the subsidy subject to recapture should not have been considered in determining the equity value of the home.[2] He analogizes the subsidy to future earnings, and cites *Yoon v. Yoon,* 711 N.E.2d 1265, 1269 (Ind.1999) for the proposition that the future earnings should not be considered as marital property subject to division. Cherie counters that to determine the equity value in the manner proposed by Marc requires an assumption that the mortgages will continue to be subsidized for their entire duration, and that such an assumption would result in an inappropriate consideration of future earnings.

■ We are not persuaded by the analogy Marc draws between *Yoon,* which involved the valuation of a medical practice, and the subsidized home mortgage loans at issue. Marc has not cited any authority, nor are we aware of any, governing the result he advocates. At the dissolution hearing, Cherie testified that the fact that a portion of the parties' equity was subject to recapture meant that they would be required to pay back the subsidized portion "off the top" of the proceeds of the house's sale. Thus, Cherie does not enjoy the benefit of the subsidy free and clear of future liability. Put another way, Cherie's right to the equity in the home is not "vested," a situation analogous to one's right in pension benefits. In order to include pension benefits as marital property, the benefits must be vested and payable either before or after the dissolution. *Hodowal v. Hodowal,* 627 N.E.2d 869, 873 (Ind.Ct.App.1994), *trans. denied.* In this case, if the parties sold the marital home, either before or after dissolution, they would be immediately compelled to repay the portion of both mortgages for which

**2.** Both mortgages were subsidized by the Rural Housing Service of the United States Department of Agriculture ("USDA"). The record does not disclose the precise terms of the loan, but we surmise that the USDA assists loan program participants by subsidizing a portion of the mortgage payments; such payments, however, are "subject to recapture" if, for example, the real estate is sold. As Cherie testified at the dissolution hearing, "Any off of both loans ... there's a recapture amount.

Any assistance you receive from [the USDA] during [the life of the loan] has to be paid back if the house is ever sold right off the top." She introduced two exhibits, one for each mortgage, indicating that the combined "total subsidy subject to recapture" was $3,940 as of April 30, 1999. Marc contends that the trial court should not have considered this figure when computing the parties' equity in the home; as a result, he argues, the actual equity is roughly $12,099.

they had received assistance. Therefore, the trial court did not abuse its discretion by subtracting the total owed on both mortgages – including the amount subject to recapture – from the home's market value.

■ Regarding the award of the home to Cherie, Marc argues that the trial court did not "adequately consider" her ability to meet the mortgage payments and her other expenses given her income and circumstances. Because Cherie's daughter from a previous marriage and infant granddaughter were living in the home at the time of the hearing, and would be staying there for the foreseeable future, Marc argues that Cherie will not be able to meet her financial obligations, including the mortgage. In support of his contentions, he cites portions of Indiana Code Section 31–15–7–5, governing the presumption for equal division of marital property and the factors properly employed in rebutting that presumption. However, the record reflects that at the dissolution hearing, the trial court was fully apprised of both parties' incomes and expenses. The record also reflects that the court arrived at an equal division of the marital property, as evidenced by its order for Cherie to pay Marc $502.65 as "equalization," as contemplated by Indiana Code Section 31–15–7–4.[3] Thus, Indiana Code Section 31–15–7–5, to be invoked when the trial court deviates from an equal division of property, does not apply. We decline to reweigh the evidence, which supports the trial court's determination that Cherie should remain in the marital residence and assume the mortgage payments thereon.

### B.  The Intrepid

■ Marc next contends that the trial court abused its discretion by failing to order that his name be removed from the loan, even though it ordered Cherie to

assume the payments thereon and hold him harmless for the debt. Marc supports his argument on this issue by reiterating his assertions regarding the relative economic circumstances of the parties, claiming that if his name remains on the loan and Cherie fails to make the payments, he will be forced "either [to] make the payments or become subject to litigation concerning the indebtedness" on the Intrepid.

We have held that a trial court may direct one party to pay a joint debt and hold the other party to that debt harmless thereon, so long as the trial court's judgment does not affect the rights of any individual other than the litigants. *See Copeland v. Copeland*, 145 Ind.App. 73, 77, 248 N.E.2d 571, 574 (1969). Moreover, our supreme court has held a divorce court to be without authority to relieve one spouse from the liability of a mortgage on marital real estate when the mortgagee is not a party and does not consent to being divested of its interest. *Shula v. Shula*, 235 Ind. 210, 214, 132 N.E.2d 612, 614 (1956). Although *Copeland* and *Shula* both involved mortgages for real property, the principle is the same as in the instant case: the trial court, while having the power to order Cherie to be solely responsible for the Intrepid loan, and further to hold Marc harmless thereon, did not have the power to affect the obligee's interest by ordering his name removed from the loan. The trial court considered Cherie's ability to make the Intrepid payments, and we cannot reweigh that evidence. Further, we may not speculate as to what might happen if Cherie fails to make the Intrepid payments in the future.

### C.  Credit for Payments

■ Finally, Marc claims that the trial court abused its discretion by crediting Cherie for certain payments she made during the pendency of her petition for dissolution. He advances an itemized scheme

---

**3.** Indiana Code Section 31–15–7–4 provides in pertinent part, "the court shall divide the [marital] property in a just and reasonable manner by ... (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper; ...."

in support of his argument that he should have been credited for mortgage and other payments totaling more than $2,500. Marc's argument amounts to nothing more than an attempt to reweigh the evidence. At the dissolution hearing, Cherie presented an itemization of all the debts she had paid since she filed her petition for dissolution, some of which were disallowed by the trial court. Marc concedes that at the time of the dissolution hearing, he "[had not] paid all the bills he had been ordered to pay in the [p]rovisional [o]rder." Again, we will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Chase*, 690 N.E.2d at 755–56. Such is not the case here. The trial court arrived at an equitable distribution of the marital property, taking into account the value of all marital property as well as the parties' payment or non-payment of marital debts during the pendency of the dissolution petition. Considering, as we must, only the evidence most favorable to the trial court's disposition of the marital property, we conclude that the trial court did not abuse its discretion. *See id.*

Affirmed.

DARDEN, J., and MATTINGLY, J. concur.