**Peter L. BENJAMIN, Appellant–Respondent,**

v.

**Denise Marie BENJAMIN, Appellee–Petitioner.**

No. 64A03–0211–CV–386.

Court of Appeals of Indiana.

Nov. 19, 2003.

J. Michael Katz, Goodman, Katz, Scheele & Bauswell, Highland, IN, Attorney for Appellant.

Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Peter Benjamin ("Husband"), appeals following the trial court's order denying in part his Verified Petition to Set Aside Dissolution Decree of May 3rd, 2002. Husband also appeals from the trial court's dissolution decree. Upon appeal, Husband presents two issues for our review, which we renumber and restate as: (1) whether the trial court properly determined that fees from legal services contracts which Husband had assigned to another law firm were marital assets subject to equal distribution, (2) whether the trial court properly awarded wife rehabilitative maintenance, and (3) whether the trial court abused its discretion in denying in part Husband's motion for relief from judgment.

We affirm.

Denise Benjamin ("Wife") and Husband were married on May 31, 1980. On July 26, 2001, Wife filed a petition for dissolution of marriage from Husband in the Porter Superior Court. At the time of the filing, both Husband and Wife were residents of Lake County. On August 13, 2001, Husband, pro se, filed an acknowledgment of residency, service of summons, and consent to the jurisdiction of the Porter Superior Court. In March 2002, the trial court, at Wife's request, set the matter for a final hearing on April 25, 2002. Wife's counsel sent notice of the final hearing to Husband at a post-office box which Husband apparently had requested be used for correspondence relating to the divorce proceedings. Husband, however, did not appear at the final hearing.

Nevertheless, the court conducted the final hearing as scheduled, hearing testimony from Wife concerning the marital assets and debts and Husband's conduct with regard to dissipation of the assets. Specifically, Wife testified and presented evidence that in the year prior to her petition for dissolution, the marital estate consisted of the following assets: a condominium in Marco Island, Florida worth

$535,000, with $520,000 in equity;[1] a vacant lot in Schererville, Indiana worth $150,000; a home in Schererville, Indiana worth $537,000, with $200,000 in equity; Husband's various individual retirement accounts (collectively "IRAs") totaling $41,267; Husband's deferred compensation account with Nationwide Retirement Solutions totaling $97,731; Wife's deferred compensation account with Nationwide Retirement Solutions totaling $96,287; Husband's account with the Public Employee's Retirement Fund ("PERF") totaling $22,044; Wife's account with PERF totaling $28,317; and Husband's life insurance policy with Northwestern Mutual with a cash surrender value of $92,166. In total, Wife estimated that the marital assets totaled approximately $1.2 million. Additionally, Wife testified that Husband had a law practice which she claimed was an asset that was developed during the course of the marriage and which produced an income of $200,000 to $250,000 a year.

As to Husband's dissipation of the marital assets, Wife testified that Husband sold the condominium in Marco Island, Florida.[2] Wife further testified and presented evidence that Husband dissipated many of the marital assets such that at the time of the final hearing, Wife estimated that the marital assets totaled approximately $150,000. Of this amount, $96,000 was in Wife's deferred compensation account and

$28,000 was in Wife's PERF account. Of Husband's accounts, the $22,000 remained in his PERF account and approximately $7,000, of what once totaled over $97,000, remained in his deferred compensation account. Wife further testified that Husband's withdrawals from his deferred compensation account occurred after the trial court's July 26, 2001 restraining order prohibiting Husband and Wife from dispensing or disposing of marital assets. Additionally, approximately one month prior to Wife filing the petition for dissolution, Husband withdrew all monies, over $41,000, from his IRAs. Wife explained that she was never consulted about the withdrawals and that she did not know where the money went. Wife further testified that Husband took out loans against the full cash value of his life insurance policy.[3]

With regard to Husband's law practice, Wife testified that Husband "gave it up." Appendix at 23. Wife explained that the Indiana Supreme Court Disciplinary Commission had filed a Verified Complaint for Disciplinary Action against Husband in the fall of 2000 and that Husband had hired Saul Ruman of the law firm of Ruman, Clements, Tobin & Holub P.C. ("the Ruman law firm") to represent him in that matter. Upon the advice of counsel, Husband tendered his resignation from the bar of this State to the Indiana Supreme

---

1. Wife testified that she and Husband were co-owners of the condominium with her grandparents. Wife's grandparents provided the entire $70,000 down payment, but Wife and Husband jointly paid the mortgage payments and maintenance fees thereafter. Wife's grandparents were to live in the condominium for the rest of their natural lives. The down payment provided by the grandparents was intended to be Wife's inheritance from her grandparents.

2. As an exhibit, Wife submitted a copy of Husband's emergency request for deferred compensation proceeds. In a handwritten

note Husband attached to the emergency application, Husband indicated that he sold the condominium in Marco Island, Florida and that he used the proceeds of the sale to pay off a financial debt in the amount of $500,000. Wife testified that she had no knowledge of the loan which Husband repaid with the condominium proceeds.

3. Apparently the vacant lot and the home in Schererville were sold. It is unclear as to what happened with the proceeds from the sale of each.

Court. The Supreme Court accepted Husband's resignation on October 22, 2001. *In re Benjamin,* 756 N.E.2d 967, 968 (Ind. 2001). As consideration for representing Husband with regard to the disciplinary action, the Ruman law firm agreed to accept from Husband an assignment of fees from several of Husband's existing legal services contracts. Wife claimed that in assigning the fees Husband essentially assigned a marital asset and thus argued that she was entitled to one-half of the fees Husband had assigned to the Ruman law firm.

On May 3, 2002, the trial court issued a dissolution decree dissolving the marriage and dividing the marital estate. As to the division of the marital assets, the trial court awarded Wife all sums of money in her PERF and deferred compensation accounts. The trial court further awarded wife all monies contained in Husband's PERF account, any sums remaining in Husband's deferred compensation account, and any sums available from Husband's Northwestern Mutual life insurance policy. With respect to Husband's assignment of legal fees, the court, in the dissolution decree, found and concluded as follows:

> "The Court finds that during the course of the parties [sic] marriage, [Husband] assigned various legal cases to Saul Ruman and to the Ruman Law Firm. By doing so [Husband] essentially assigned

a marital asset to the Ruman Law Firm without [Wife's] consent or approval. The Court now awards [Wife] one-half of any and all entitlements, for costs on [sic] any other expenses that [Husband] has have [sic] or may have had in or resulting from all such cases." Appendix at 132.

The court also awarded Wife $400,000 as "rehabilitative maintenance."[4] Appendix at 161.

On June 11, 2002, Husband filed his Verified Petition to Set Aside Dissolution Decree of May 3rd, 2002, alleging as grounds for relief from judgment that he did not have notice of the final hearing and that Wife had made fraudulent representations to the trial court in obtaining the dissolution decree.[5] On August 12, 2002, Wife filed a verified response to Husband's petition and also filed a motion pursuant to Trial Rule 60(A) asking the trial court to amend the dissolution decree to include a page which she claimed was erroneously omitted from the court's original decree.[6] A hearing on Husband and Wife's respective motions was set for August 15, 2002. Upon Husband's request for a continuance, the trial court rescheduled the hearing for October 15, 2002.

On October 2, 2002, Husband's attorney sent a letter addressed to the trial court wherein he indicated that he and Wife's attorney "agreed that there [were] certain

---

4. The marital debts consisted of numerous credit card balances. In the dissolution decree, the trial court ordered Husband to assume the debt of two joint accounts totaling over $35,000, and any credit card balances which were in Husband's name. Wife was ordered to pay on the credit cards for Kohl's, Carsons, Ayres, Bloomingdale's, Saks Fifth Avenue, and Wickes, with the exception of any charges made by Husband.

5. Husband's verified petition to set aside the dissolution decree is a motion for relief from judgment pursuant to Trial Rule 60(B).

6. Indeed, the original dissolution decree entered by the trial court included five unnumbered pages containing seven enumerated findings paragraphs followed by nine complete and a tenth incomplete paragraph ordering the division of marital assets and debts. The tenth incomplete paragraph ends at the bottom of the fourth page and is followed by the signature page of the magistrate and judge.

discovery issues which need[ed] to be resolved" and that "[i]t was [their] intention, with acquiescence of the Court, to appear on October 15th at 10:00 a.m. for the purpose of presenting [their] respective positions on these issues to the Court." Supplemental Appendix at 8–9. Husband's attorney further indicated that "[t]he preliminary issue to be resolved is whether or not both parties are entitled to take the discovery depositions of witnesses on substantive issues prior to the hearing." *Id.* at 8. Husband and Wife, by their respective counsel, appeared for the hearing on October 15. At the hearing, the primary issue which was presented to the court concerned discovery. Husband's attorney explained to the court that he wanted to take depositions of certain individuals for purposes of establishing his fraud allegations and a meritorious defense as required for his motion to set aside the dissolution decree. Wife's attorney opposed further discovery and requested that the court issue a protective order pursuant to Trial Rule 26(C)(1) or (2).[7]

On October 21, 2002, the court entered its order granting Wife's motion pursuant to T.R. 60(A) and thereby adopted as its judgment the complete dissolution decree which was set forth as Exhibit A to Wife's motion.[8] Additionally, the court's order denied Husband's motion for relief from judgment "with respect to all issues raised in its [sic] Verified Petition ... with the exception of the allegation of fraudulent representations perpetrated on the Court by [Wife]." Appendix at 8. The court ordered that the issue of fraud on the part of Wife should proceed to hearing on November 18, 2002.[9] The court further ordered that pursuant to T.R. 26(C)(1), a protective order be issued prohibiting any further discovery. It is from this order[10] and from the entry of the dissolution decree which Husband now appeals.

Husband first challenges the propriety of portions of the dissolution decree. Husband contends that it was error for the trial court to designate as a marital asset the legal fees to be earned from particular legal cases which he had assigned to the Ruman law firm. Specifically, Husband argues that the court's award is in violation of Indiana Professional Conduct Rule 5.4(a) and (b) in that the court essentially considered Wife, a non-lawyer, a partner in Husband's law firm and permitted her to share in the legal fees from the legal services contracts. Wife, however, argues

---

7. Indiana Trial Rule 26(C) provides in pertinent part:

"Upon motion by any party ... and for good cause shown, the court ... may make any order which justice requires to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) that discovery not be had;
(2) that the discovery may be had only on specified terms and conditions, including the designation of the time and place...."

8. The dissolution decree as adopted by the trial court includes the page omitted from the original decree. The missing page included the conclusion of the tenth paragraph as well as two additional paragraphs regarding the distribution of marital assets and debts.

9. Husband filed his notice of appeal on November 7, 2002. As of November 14, 2002, when the Notice of Completion of Clerk's Record was filed with this court, the trial court was deprived of further jurisdiction. Consequently, no action could be taken upon Husband's motion to set aside the dissolution decree upon grounds of fraud. *See* Ind. Appellate Rule 8.

10. Trial Rule 60(C) provides that "A ruling or order of the court denying or granting relief, in whole or in part, by motion under subdivision (B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom as in the case of a judgment."

that the fees which Husband assigned were a marital asset and thus, the trial court properly awarded her half of any sums which Husband was entitled to receive.

Pursuant to the assignment agreement, Husband assigned:

"so much of the right, title, and interest . . . in and to any and all distributions of money or property, payments or returns of capital of any kind or nature whatsoever which [Husband] is entitled to receive from time to time pursuant to the [listed] legal services contracts or agreements, as may be necessary to pay fees for legal services rendered to [Husband] by [the Ruman law firm]." Appendix at 75.

To the extent the amounts received were not sufficient to pay for the legal services rendered by the Ruman law firm, Husband was required to pay the sums not satisfied by the assignment of fees. To the extent the amounts received were in excess of the sums due the Ruman law firm for its representation of Husband, Husband was entitled to an amount of the excess to be determined on a case-by-case basis.

Husband acknowledges that it would have been proper for the trial court to consider the value of his law practice for purposes of marital asset distribution, but argues that the court misinterpreted the law when it awarded Wife an equal share of the fees that Husband was entitled to receive from specific legal cases. Husband further asserts that Wife presented no evidence as to the value of his law practice. We disagree on both counts.

■ A professional practice may have value for purposes of marital asset distribution. *Landau v. Bailey*, 629 N.E.2d 264, 266 (Ind.Ct.App.1994). Where a professional corporation has an economic value, it is subject to equal distribution as a marital asset. *Id.* at 267. Here, the eco-

nomic value of Husband's law practice, and the only part of which remained, was embodied within the legal fees Husband was entitled to receive under the legal services contracts. Thus, in assigning the fees to Ruman law firm, Husband encumbered a marital asset. At the final hearing, the court explained that, as a marital asset, Wife was entitled to half of the fees Husband had assigned to the Ruman law firm and that such an award was necessary to help compensate her for the money and other assets Husband had dissipated. We therefore conclude that the trial court properly awarded Wife half of any amount Husband was entitled to receive under the terms of the assignment agreement.

Husband also argues that the trial court erred in awarding Wife $400,000 in rehabilitative maintenance. Husband asserts that Wife did not request rehabilitative maintenance in her petition for dissolution, nor did she provide evidence to satisfy the statutory requirements for an award of rehabilitative maintenance. Wife concedes that the $400,000 award may not be deemed rehabilitative maintenance, but argues that the award should be sustained as a valid property division.

■ At the final hearing, after hearing testimony about the marital assets and debts and Husband's conduct with regard to dissipation of the assets, Wife requested that the trial court award her an "alimony judgment" in the sum of $400,000, which she asserted represented her half of the marital pot. As Indiana does not have provisions for an award of alimony, the court suggested that the award be labeled as "a maintenance award." Appendix at 39. In the divorce decree, the court referred to the $400,000 award as "rehabilitative maintenance." *Id.* at 161. The court further ordered that Husband was to

pay the award within twenty days of the date of the dissolution decree.

■ We begin by noting that characterizing an award as maintenance does not make it so. *See Millar v. Millar*, 581 N.E.2d 986, 987 n. 1 (Ind.Ct.App.1991), *trans. granted rev'd as to remedy ordered* 593 N.E.2d 1182, 1183 (Ind.1992). Here, notwithstanding the label attached, it is clear that from the record that the $400,000 award was intended to be an award representing Wife's distribution of the marital estate. In requesting the $400,000 award, Wife indicated that such represented a portion of her share of the marital pot. Further, Wife had testified that, prior to filing her petition for dissolution, the marital estate was valued at approximately $1.2 million. Assuming an equal distribution, Wife would have been entitled to $600,000. In addition to awarding wife $400,000 as "rehabilitative maintenance," the trial court awarded wife the approximately $150,000 remaining in Husband and Wife's various accounts which had been shown to be marital assets. The court also awarded Wife unspecified amounts in bank and credit union accounts and the personal property in her possession. The trial court ordered Husband to be responsible for the majority of the marital debt, including tax liabilities and credit card balances. To the extent the distribution was in favor of Wife, the trial court stated that Husband's dissipation of assets justified its distribution of the marital assets and debts.

Wife asserts that we need not remand to the trial court for correction of the dissolution decree, but that we may simply hold that the $400,000 award was a valid property settlement. In *Millar*, a panel of this court considered whether an award in a dissolution decree was properly labeled as a maintenance award. The majority opinion remanded to the trial court to either set forth findings to support an award of maintenance or to vacate the finding of maintenance and enter a property distribution award. 581 N.E.2d at 988. Chief Judge Ratliff dissented as to the majority's remand to the trial court, asserting that because the trial court's award was clearly a property settlement, the court should so hold, thus making remand unnecessary. Our Supreme Court granted transfer and agreed with Chief Judge Ratliff. The Court held that remand was unnecessary and therefore affirmed the trial court's judgment as a property division, not a maintenance award. *Millar v. Millar*, 593 N.E.2d 1182, 1183 (Ind.1992). We therefore hold that the $400,000 award in favor of Wife is a property settlement, not a maintenance award.[11]

Finally, Husband argues that the trial court abused its discretion in denying in part his motion to set aside the dissolution decree on the issue of lack of notice without first conducting a hearing thereon. Husband further argues that the trial court abused its discretion in prohibiting him from conducting further discovery for purposes of meeting the requirements of

---

**11.** Husband does not challenge the amount of the award or the propriety of such as a division of the marital property. However, in his reply brief, Husband argues that whether the $400,000 award could effectively be deemed a valid property division is subject to the ruling of the trial court with regard to the issue of fraud raised in his motion to set aside and which is still pending before the trial court. While the dissolution decree, including the $400,000 award, may be set aside if the trial court determines that Husband should be granted such relief, it remains that the $400,000 award is not a valid rehabilitative maintenance award, but rather was intended to represent Wife's share of the marital property. Our decision does not affect whether the trial court may eventually set aside the award upon consideration of Husband's fraud allegations.

T.R. 60(B). Husband asserts that pursuant to T.R. 60(D), the trial court was required to conduct a hearing on the merits of his motion and allow discovery.

We first consider whether the trial court was required to hold a hearing as to Husband's claim of lack of notice. Husband argues that the hearing on October 15 was as to discovery issues as they pertained to his motion to set aside the dissolution decree and that it was not a hearing on the merits of his motion. It was after this hearing that the trial court denied his motion as to his claim of lack of notice.

■■■ The plain language of T.R. 60(D) requires the trial court to conduct a hearing in passing upon a motion for relief from judgment under T.R. 60(B). Specifically, T.R. 60(D) provides:

"In passing upon a motion allowed by subdivision (B) of this rule the court *shall* hear any pertinent evidence, allow new parties to be served with summons, allow discovery, grant relief as provided by Rule 59 or otherwise as permitted by subdivision (B) of this rule." (emphasis supplied).

However, where there is no "pertinent evidence," a hearing is unnecessary. *Rothschild v. Devos*, 757 N.E.2d 219, 223 (Ind. Ct.App.2001).

We agree with Husband that the hearing on October 15 primarily concerned discovery. Nevertheless, at that hearing, Husband's motion to set aside the dissolution decree was pending before the court and Husband's attorney acknowledged that fact. We cannot think of anything which would have prevented Husband from arguing that the dissolution decree should be set aside upon grounds that he did not have notice of the final hearing.

Husband did not indicate that he needed to conduct discovery or depose witnesses before presenting his argument as to his lack of notice claim.

Additionally, we note that at the October 15 hearing, Wife argued that Husband's claim of lack of notice was without merit and reviewed for the court the evidence which was presented at the final hearing which tended to show that Husband was notified of the final hearing. In response to Wife's argument, Husband argued to the court that he did not have notice. Thus, although Husband claims that the October 15 hearing was not on the merits of his lack of notice claim, it is apparent that the evidence pertinent to such claim was presented to the court. Therefore, we conclude that the trial court did not abuse its discretion in denying Husband's motion to set aside the dissolution decree upon grounds of lack of notice.

Husband also argues that discovery is mandatory pursuant to the plain language of T.R. 60(D) and therefore asserts that the trial court abused its discretion when it prohibited him from engaging in discovery for purposes of gathering evidence in support of his motion. Wife opposed further discovery, asserting that she would be prejudiced by further delay and the added expense of conducting additional discovery.

■■■ In *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 425 (Ind.Ct.App.1984), a panel of this court held that Keystone's argument that the plain language of T.R. 60(D) mandated that the court permit discovery was "unsound." [12] While the language of the rule may be read as requiring the trial court to allow discovery for purposes of a motion for relief from judgment,

---

**12.** The language of T.R. 60(D) has not changed since the court's decision in *Key-*
*stone.*

it remains that discovery is an issue within the sound discretion of the trial court. *See id. See also In re Paternity of T.M.Y.,* 725 N.E.2d 997 (Ind.Ct.App.2000) (holding that discovery under T.R. 60(D) is permissive rather than mandatory), *trans. denied.* Limitations are necessarily placed upon discovery to prevent it from becoming a tool of oppression and harassment. *Keystone,* 459 N.E.2d at 425. We will reverse a trial court's grant or denial of a discovery request for an abuse of discretion. *Id.*

We begin by noting that Husband consented to the jurisdiction of the Porter Superior Court, and thus, it is clear that he at least had notice of the pendency of the dissolution action. During the course of the divorce proceedings, however, Husband failed to comply with Wife's discovery requests and never filed with the court a financial declaration. Further, in violation of a restraining order, Husband dissipated the vast majority of marital assets. Finally, Husband did not appear for the final hearing. While Husband argued that his failure to appear at the final hearing was excusable because he did not have notice of such, the trial court did not credit his argument in light of evidence presented by Wife indicating that Husband had notice of the final hearing and yet chose not to appear. Under the circumstances of this case, especially Husband's conduct during the course of the proceedings, the trial court could well have concluded that Husband's request to conduct discovery at this late stage in the proceedings would pose undue burden or expense upon Wife or that Husband's request was another way to delay the proceedings and serve as an annoyance. We therefore conclude that the trial court was thus well within its discretion in issuing a protective order prohibiting Husband from conducting further discovery.

The judgment of the trial court is affirmed.

RILEY, J., and MAY, J., concur.