**In re the Marriage of Denise Marie BENJAMIN, Appellee–Petitioner,**

**v.**

**Peter BENJAMIN, Respondent,**

**Saul I. Ruman, individually, and Ruman, Clements & Holub, P.C., Appellants–Garnishee Defendants.**

No. 64A04–0505–CV–284.

Court of Appeals of Indiana.

June 26, 2006.

David C. Jensen, John P. Twohy, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellants.

Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellee.

**OPINION**

KIRSCH, Chief Judge.

Saul I. Ruman, individually, and the law firm Ruman, Clements & Holub, P.C. (collectively "Ruman") appeal the trial court's denial of their motion to correct error, which sought relief from the trial court's order directing Ruman to turn over certain funds to Denise Benjamin, the former wife of Ruman's client, Peter Benjamin. Ruman raises three issues, which we consolidate and restate as:

I. Whether Indiana's Rules of Professional Conduct regarding fee sharing permit Peter, and, by extension, Denise to share in any portion of the fees collected by Ruman on the cases that Peter previously assigned to Ruman.

II. Whether Ruman is entitled to set off that portion of fees that Peter

owed them for representing him before Peter is entitled to receipt of any sum.

Denise cross-appeals and argues that, although the trial court correctly determined that she was entitled to certain funds from Ruman, its calculation was incorrect, and she is entitled to a greater amount.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Denise and Peter married in May 1980 and divorced in May 2002. Peter unsuccessfully moved to set aside the dissolution decree; thereafter, he appealed, but was denied relief. *Benjamin v. Benjamin,* 798 N.E.2d 881 (Ind.Ct.App.2003). This appeal concerns Denise's post-dissolution attempts to collect, through garnishment, certain funds that she maintains are hers under the terms of the decree.

Denise filed her petition for dissolution in July 2001. At that time, Peter was Auditor of Lake County; he also was an attorney and maintained a law practice. Prior to Denise's filing for dissolution, the Indiana Supreme Court Disciplinary Commission filed a complaint against Peter in the fall of 2000. Peter hired Saul Ruman of the Ruman law firm to represent him in that matter. As consideration for representing Peter in the disciplinary action, Ruman agreed to accept an assignment of fees from a number of Peter's then-pending contingency fee cases. Specifically, Peter entered into an Assignment Agreement ("Assignment") with Ruman on March 3, 2001, which stated, in relevant part:

The undersigned, Peter L. Benjamin, a resident of Lake County, Indiana (Assignor), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby grants, conveys, assigns, transfers and sets over unto Ruman, Clements, Tobin & Holub, P.C., a professional corporation duly incorporated in the State of Indiana (Assignee) and the successors and assigns of the Assignee, so much of the right, title, and interest of the Assignor in and to any and all distributions of money or property, payments or returns of capital of any kind or nature whatsoever which Assignor is entitled to receive from time to time pursuant to the following legal services contracts or agreements, as may be necessary to pay legal fees for legal services rendered to Assignor by Assignee:

Michael Briggs [1]

Richard Concialdi, Jr.

Linda Elwell

Tina M. and Joseph Fleming

Thuu–Thi Osborn

Sheila Sluis

Temeka Warren

Brandi Wheeler

. . .

In no event is this Assignment intended as a release of any of Assignor's obligations to Assignee. Assignor agrees that, to the extent the distributions of money or property, payments or returns of capital referenced above are not sufficient to pay for legal fees rendered by Assignee to Assignor, Assignor shall pay Assignee the balance of all sums not satisfied by this Assignment. In the event that the distributions of money or property, payments or returns

---

**1.** The Ruman law firm's internal file numbers followed each case name; however, we have not included that information here.

of capital referenced above shall exceed the sums due to Assignee for fees for legal services rendered to Assignor, Assignor shall be entitled to an amount of the excess to be determined on a case by case basis, consistent with the particular legal services fee contract involved and the Indiana Rules of Professional Conduct.

*Appellants' App.* at 191, 220.

Peter did not appear at the April 2002 final hearing, but Denise testified regarding the value of various debts and assets, including Peter's law practice which Denise estimated produced income between $200,000.00 and $250,000.00 a year. She also claimed that, in assigning the fees to Ruman, Peter essentially assigned a marital asset. In its May 2002 decree, the trial court agreed and found:

> [D]uring the course of the parties [sic] marriage, [Husband] assigned various legal cases to Saul Ruman and to the Ruman Law Firm. By doing so [Husband] essentially assigned a marital asset to the Ruman Law Firm without [Wife's] consent or approval. The Court now awards [Wife] one-half of any and all entitlements, for costs on [sic] any other expenses that [Husband] has have [sic] or may have had in or resulting from all such cases.

*Appellants' App.* at 31; *Benjamin,* 798 N.E.2d at 883–85 (quoting trial court's findings). On appeal, Peter argued, among other things, that it was improper for the trial court to designate as a marital asset the legal fees to be earned from the cases he had assigned to Ruman. We disagreed and held, "[T]he trial court properly awarded Wife half any amount Husband was entitled to receive under the terms of the assignment agreement." *Benjamin,* 798 N.E.2d at 887.

In February 2003, Denise filed a petition for proceedings supplemental against Ruman, seeking to collect a share of the legal fees that Ruman had received on the cases that Peter had previously assigned to them. Ruman moved to dismiss the garnishment proceedings and quash interrogatories that Denise had propounded in an attempt to determine what proceeds of the assigned cases were in Ruman's possession. Eventually, in July 2004, Ruman sent a letter to Denise's counsel stating that Peter owed the Ruman firm $327,313.11 for legal services (related to the disciplinary action).[2] The letter also reported that Ruman thus far had collected a total of $705,431.74 on the cases Peter had assigned to the firm, which included $507,839.44 from a case entitled *Sharp v. NIPSCO. Appellants' App.* at 160–61. Without conceding that Peter was entitled to a portion of that $705,431.74, and noting the existence of various potential fee-sharing problems, Ruman stated, "Hypothetically, assuming Mr. Benjamin were to be entitled to one-third of the attorney's fees earned by [Ruman], that hypothetical amount would be one-third of the total fees, $705,431.74, which is $235,143.91." *Appellants' App.* at 160–61.

Thereafter, in November 2004, the trial court issued an order that found (1) Ruman had credited the sum of $235,143.91 to Peter's outstanding attorney fees, and (2) Denise was entitled to one-half of that sum, pursuant to the Decree. It therefore ordered Ruman to turn over half that sum to Denise. *Appellants' App.* at 21–22, 171–72. Ruman filed a motion to correct error, arguing that because the outstanding legal fees that Peter owed to Ruman ($327,313.11) exceeded his "hypothetical one-third share" ($235,143.91) by

---

2. Our Supreme Court accepted Peter's resignation from the Indiana Bar on October 22, 2001. *In Re Benjamin,* 756 N.E.2d 967, 968 (Ind.2001).

$92,169.20, Peter was not entitled to any fees, and, by extension, neither was Denise. Following a hearing, the court denied the motion, and Ruman now appeals.

Denise cross-appeals, arguing that the *Sharp v. NIPSCO* case was not part of the Assignment, and thus the $507,839.44 collected on that case is outside the scope of that agreement. Accordingly, she asserts, Ruman is not entitled to any portion of those fees.

## DISCUSSION AND DECISION

 We review the trial court's decision to grant or deny a motion to correct error for abuse of discretion. *Gard v. Gard,* 825 N.E.2d 907, 910 (Ind.Ct.App. 2005) (citing *Wright v. Wright,* 782 N.E.2d 363, 366 (Ind.Ct.App.2002)). An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.*

### I. Ruman's Appeal

This dispute concerns the attorney fees received by Ruman under the Assignment, and, more precisely, whether and when Denise is entitled to some portion of them. Ruman asserts that the trial court's decision ordering them to pay Denise some portion of the fees that they have collected on the assigned cases is erroneous for several reasons, including (1) it is not consistent with our prior opinion in *Benjamin;* (2) it does not comport with the requirements of the garnishment statute; and (3) it violates Ruman's Constitutional rights by restricting their property rights. Although we agree that the trial court's order is in error, we reverse and remand primarily on other, independent grounds.

### A. Fee Sharing

With the exception of the *Sharp v. NIPSCO* case, which Denise maintains is completely outside the scope of the Assignment, Denise appears to proceed on the premise that Peter is entitled to one-third of the fees generated on the cases that he previously assigned to Ruman and that, because those fees are a marital asset, she is entitled to one-half of his one-third. Ruman does not expressly concede that Peter is entitled to one-third of the fees, but maintains that, even if he is, Peter's one-third of the total fees is well less than he owes Ruman for legal representation in the disciplinary action; therefore, Peter is not yet "entitled" to anything under the Assignment, nor is Denise.

Ind. Professional Conduct Rule 1.5(e) governs the matter of fee sharing between lawyers not in the same firm and imposes strict limits on when and under what circumstances it may occur. It provides:

A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Our Supreme Court has held that fee sharing between attorneys not in the same firm is only permissible if the attorneys comply fully with Prof. Cond. R. 1.5(e). *In re Hailey,* 792 N.E.2d 851, 862 (Ind.2003).

In this case, the record before us does not provide us with necessary information to resolve this dispute. By way of example, we do not know with certainty whether all of the cases Peter assigned were

contingency cases. We do not know what type of prior fee agreement Peter had with his assigned clients, if any, nor what any such agreement provided in terms of fees. Likewise, we do not know whether Ruman provided a new fee agreement to those clients once it received responsibility for the cases under the Assignment or whether in each of the assigned cases the total fee received by Ruman was "reasonable." Prof. Cond. R. 1.5(e). If Ruman did, in fact, offer and obtain new agreements with the assigned clients, we do not know what those agreements provided with regard to fee sharing with Peter, if anything. We do not know what portion of work Peter did on the cases either before or after he assigned them to Ruman, nor do we know whether that work, if any, was proportionate to any fee that Ruman may have credited to his outstanding bill with that firm. We do not know when Ruman received the fees, whether receipt was before or after Peter's disbarment, and whether that has any bearing on the appropriateness of crediting his outstanding bill in any amount. We do not know what fees, if any, Ruman eventually received on the *Sheila Sluis* case, which was pending at the time Ruman sent the July 2004 letter to Denise indicating what fees Ruman had received to date on the assigned cases. Although Denise maintains that Peter paid litigation expenses in one or more cases prior to assigning the cases to Ruman, that Ruman was later reimbursed for those same expenses, and that she is entitled to one-half of that amount, we do not know what expenses Peter, in fact, paid, when he paid them, or in what amount; nor do we know when or if Ruman was later reimbursed for those same expenses.

■ Finding that far too many outstanding issues prevent a decision regarding the appropriateness of any fee sharing between Peter and Ruman, we hold that the trial court abused its discretion when it denied Ruman's motion to correct error and ordered Ruman to pay Denise certain sums. We remand for evidentiary hearing(s) for the parties to present evidence on these issues and any related matters necessary for trial court resolution and order Peter, Saul Ruman, and the Ruman law firm to comply with any reasonable discovery requests directed at resolving these outstanding matters, including, but not limited to, attorney billing records, fee agreements, and other relevant correspondence.

### B. Assignment and Set–Off

If, on remand, it is determined that fee sharing with Peter is permissible, the next inquiry is whether and when Denise may collect her marital share of Peter's share.

In executing the Assignment with Ruman, Peter assigned nine cases to Ruman in exchange for Ruman providing legal representation to Peter in the then-pending disciplinary matter. When he did this, Peter encumbered a marital asset. *Benjamin*, 798 N.E.2d at 887. Denise asserts that because the fees from the assigned cases constituted a marital asset, the fees are subject to division immediately upon Ruman's receipt of them, and she is entitled to half of Peter's portion of those fees.

Ruman, on the other hand, argues that even if some portion of the fees appropriately may be shared with Peter, the Assignment allows and, in fact, requires that any fees shared with Peter must first be applied to his outstanding attorney fee bill with Ruman before Peter is "entitled" to receive anything. More particularly, Ruman's position is that an encumbered marital asset is not subject to division prior to payment in full of the relevant outstanding obligation. Rather, the obligation must first be paid before any division of surplus between husband and wife. *See e.g., Ellis*

*v. Ellis,* 730 N.E.2d 201, 204 (Ind.Ct.App. 2000) (divorce court held to lack authority to relieve one spouse from liability of mortgage on marital real estate). We agree with Ruman.

> Here, in the Assignment, Peter
>
> grants, conveys, assigns, transfers and sets over unto [Ruman] ... so much of [his] right, title, and interest ... in and to any and all distributions of money or property, payments or returns of capital of any kind or nature whatsoever which [Peter] is entitled to receive from time to time pursuant to the following legal services contracts or agreements, as may be necessary to pay legal fees for legal services rendered to [Peter] by [Ruman.]

Appellants' App. at 191. The Assignment further provides that if the amount of Peter's interest in the incoming fees exceeds the total he owes to Ruman, then Peter is "entitled to an amount of the excess to be determined on a case-by-case basis, consistent with the particular legal services fee contract involved...." *Id.* In his affidavit, Saul Ruman stated that his office agreed to accept the assignment of several legal matters and that "the fees for referral due Mr. Benajmin" would be applied to the fees which he incurred with the firm. Appellant's App. at 225.

▆▆▆ We find that the terms of the Assignment provide Ruman with a contractual right of set-off; that is, the out-standing obligation to Ruman (fees Peter incurred in the disciplinary action) must be satisfied before the remainder of the marital asset (if any) is available and subject to division between Peter and Denise.[3] We recognize, as did the trial court, that Denise clearly has a right to contest any amount that Ruman claims in set-off. *Appellants' App.* at 27–28 (trial court remarked at final hearing that "as far as pursuing or challenging the Ruman law firm fees, that's certainly up to her to pursue however she can[.]").

We hold that Ruman is entitled to all fees collected on the assigned cases, with the limitation that Peter may be entitled to have some fees credited to his outstanding account with Ruman, but only to the extent as provided by, and in compliance with, Prof. Cond. R. 1.5(e). If, after set-off, excess funds exist, then Peter becomes entitled to receipt of any fees determined to be properly shared with him, and Denise immediately is entitled to one-half of those, as her marital portion of those fees.[4]

## II. Denise's Cross–Appeal

Denise asserts, and we agree, that *Sharp v. NIPSCO* is not subject to the Assignment. It simply is not included in the list of cases that Peter assigned to Ruman. However, the analysis does not end there.

Denise contends, without record support, that Peter was co-counsel on *Sharp v.*

---

3. A "set-off" is the right that exists between two persons, each of whom under an independent contract, express or implied, owes an ascertained amount to the other, to set off their mutual debt by way of deduction. *Teeters v. City Nat. Bank of Auburn,* 214 Ind. 498, 501–02, 14 N.E.2d 1004, 1005 (1938). The set-off amount is subtracted from the total amount of the larger debt. *American Management, Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 432 (Ind.Ct.App.1996) (discussing set-off as counter-action against the plaintiff that grows out of matter independent of plaintiff's cause of action).

4. We note that this holding is consistent with our decision in Peter's prior appeal, where we held, "The trial court properly awarded Wife half of any amount Husband *was entitled to receive under the terms of the assignment agreement.*" (Emphasis added.) Under our holding here, Denise receives half of Peter's portion, when and if, he is "entitled" to receive any funds under the Assignment.

NIPSCO and, therefore, is entitled to half of the $507,839.44 fee received by Ruman, and she is entitled to one-half of his half. At this point, however, there has been no hearing or evidence presented on *Sharp v. NIPSCO.* Accordingly, we remand for hearing(s) to determine Peter's share of responsibility for and participation in that case, in order that the trial court may determine what percentage, if any, Peter is entitled to receive.

We note that although *Sharp v. NIPSCO* is exempt from the Assignment, and thus a contractual right of set-off does not exist, Ruman has a corresponding right to do so under common law. *Teeters,* 14 N.E.2d at 1005; *see also, Gray v. Nat'l City Bank, Indiana,* 687 N.E.2d 356, 358 (Ind.1997) (wife, who attempted to set-off debts that husband owed her in order to defeat garnishment proceedings of her bank account, waived right of set-off); *England v. Alicea,* 827 N.E.2d 555, 559 (Ind.Ct.App.2005) (court partitioning real estate interests may set-off mutual claims between parties); *INB Banking Co. v. Opportunity Options, Inc.,* 598 N.E.2d 580, 584 (Ind.Ct.App.1992), *trans. denied* (recognizing original common law right to set-off in banking context, that when depositor becomes indebted to its bank, mutual debtor-creditor relationship arises which justifies bank's right of set-off). Accordingly, as with the contractually assigned cases, Ruman may retain fees in satisfaction of Peter's debt to them, before they are required to pay any sums to Peter or Denise.

Reversed and remanded with proceedings consistent with this opinion.

SULLIVAN, J., and DARDEN, J., concur.