## BOLTZ *v.* O'CONNER.

[No. 6,638.   Filed January 14, 1910.]

1. VENDOR AND PURCHASER.—*Lands.—Representations.—Presumptions.*—A vendor is presumed to know the truth of his representations as to the character of soil on his farm, and the value thereof. p. 180.

2. VENDOR AND PURCHASER.—*Representations.—Opinions.—Value.*—Representations as to the value of a farm are usually considered as merely expressions of opinion; but where the vendor knows that the purchaser is wholly ignorant of the value of the land, and the value is stated as a fact and relied upon, to the vendor's knowledge, the vendor is bound thereby. p. 181.

3. VENDOR AND PURCHASER.—*Representations as to Value.—Answer.—Counterclaim.*—Allegations in an answer and in a counterclaim that the vendor falsely represented that his farm was worth $19,000, that the purchaser was not acquainted with the value thereof, that relying upon the representation he purchased said farm, and that such farm was not worth more than $12,000, do not show that such representation was more than the expression of an opinion. p. 181.

4. VENDOR AND PURCHASER.—*Representations as to Soil.—Answer.—Counterclaim.*—Allegations in an answer and in a counterclaim that the vendor falsely represented the soil on his farm to be rich, very productive, deep and black, for the purpose of cheating the purchaser, that the purchaser was ignorant of the falsity thereof, and that the purchaser was injured thereby, sufficiently show false representations of facts, and constitute a good defense and counterclaim to an action for the purchase price. p. 181.

5. VENDOR AND PURCHASER.—*False Representations.—Fraud.*—Vendors who falsely represent, to a purchaser's injury, are ordinarily not permitted to take advantage thereof under the pretense that the purchaser should not have believed them. p. 183.

6. VENDOR AND PURCHASER.—*False Representations.—Fraud.*—A vendor's statements that the soil on his land is very productive, rich, deep, and black, are expressions of fact and not of opinion. pp. 183, 184.

7. WORDS AND PHRASES.—*"Rich" Soil.*—The word "rich," when applied to the soil, imports fertility, productiveness, and abundance of yield. p. 183.

From Carroll Circuit Court; *James P. Wason*, Judge.

Action by Thomas W. O'Conner against Henry W. Boltz. From a judgment for plaintiff, defendant appeals. *Reversed.*

·Alfred W. Reynolds, Addison K. Sills, George C. Reynolds and *Charles R. Pollard,* for appellant.

*Truman F. Palmer, Benjamin F. Carr* and *Boyd & Julian,* for appellee.

HADLEY, J.—Appellee sued appellant to recover $2,000 on a check given by appellant to appellee, drawn upon the State Bank of Monon, and which check said bank had refused to pay on account of insufficient funds. Appellant answered the complaint in three paragraphs, the first being a general· denial, the second, fraud in the procurement of the execution of the check, and the third was in the nature of a counterclaim, and demanded the cancellation of the check and a contract for the sale of lands executed contemporaneously therewith, upon the ground of fraud in the procurement of the execution of the same. Appellee demurred to the second and third paragraphs of answer, which demurrers were sustained. Appellant then dismissed the first paragraph of answer and refused to plead further, and judgment was rendered against him.

The question here presented is upon the rulings of the court on said demurrers. It is averred in the answer and counterclaim that appellee was the owner of certain lands in White county, Indiana; that Chester Sprague was his agent; that said Sprague, for the purpose of cheating· and defrauding. appellant, and to induce him to enter into a contract to purchase appellee's said real estate, did then and there falsely represent to appellant "that the soil of said real estate was very productive; that it was rich; that it was a deep, black soil; that it was the richest real estate in White county, Indiana, and was of the value of $19,000; that at that time appellant lived about fifteen miles from said real estate; that he was not acquainted with said real estate; that he was not acquainted with the soil of said real estate nor with the soil of the real estate in that locality— whether productive or not, whether rich or poor soil—nor of

the value thereof; that he had been, for some time prior thereto, acquainted with the agent of appellee; that relying upon the statements made by said appellee and his said agent, and believing them to be true, he entered into a written contract with appellee, in which he agreed to purchase said real estate and pay therefor the sum of $19,000; that said check sued on was in part payment of said contract price, and said representations were and are false and made for the fraudulent purpose of selling said real estate to appellant at an excessive price, and for the purpose of procuring appellant to enter into said contract; that said representations were false, in this, that the soil of said real estate was not very productive and it was not rich; that it was not a deep, black, rich soil; that said real estate was not the richest in White county, and was not of the value of $19,000, nor of the value of more than $12,000; that the soil of said real estate was and is poor; that it is sandy, and the sand and gravel lie near the surface of the ground, all of which appellee well knew at the time said representations were so made by him and his agent." Further facts were averred, showing that no possession of the land had been taken, or other property received or rights exercised, under the contract by appellant.

It will be observed that the representations which are averred to be false, are representations of matters of which the owner is presumed to know the truth, although 1. there is no averment of confidential relations existing between appellant and appellee or his agent. It is shown that appellant was acquainted with the agent of appellee. It is not averred that appellant was ignorant or in any way deficient in understanding or comprehension, and thereby rendered unequal to the task of protecting his interests against the representations of appellee or his agent. Neither is it averred that appellee knew that appellant was unacquainted with the land, its quality, character or value, or was unacquainted with the values of land or other prop-

erty generally; nor that appellee knew that appellant was relying upon him or his agent for information as to these matters; nor that appellee or his agent had any special knowledge or were experts as to the value of said real estate; but it is averred that the representations complained of were falsely and fraudulently uttered for the purpose of deceiving and cheating the appellant, and that the appellee knew that such representations were false when he made them, and that appellant was misled and injured by them.

As a rule, representations as to value are not held to be statements of fact, but are considered expressions of opinion. *Culley* v. *Jones* (1905), 164 Ind. 168; *Bolds* v. *Woods* (1894), 9 Ind. App. 657; *Shade* v. *Creviston* (1884), 93 Ind. 591; *Kennedy* v. *Richardson* (1880), 70 Ind. 524. This is not a hard and fast rule, however. In certain circumstances such representations may be made the grounds of an action, and are called affirmations of fact. *Culley* v. *Jones, supra.* The rule by which such expressions should be measured is laid down in the case of *Culley* v. *Jones, supra,* by the following from *Murray* v. *Tolman* (1896), 162 Ill. 417, 44 N. E. 748: "Where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to the value, and such representation is not a mere expression of opinion but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound."

The averments of the answer and counterclaim of the representations as to the value of the land cannot be said to present such circumstances as to make them exceptions to the general rule, and in this regard are insufficient as a defense or counterclaim. It is averred in both the answer and counterclaim that appellee represented the soil of said land to be rich, very productive, and a deep, black soil, all of which is averred to

be false and was known to be false, and that the truth
in regard thereto was unknown to appellant.   It must be
conceded that the averments in this connection are indefinite
and meager; but when taken with the averment that they
were falsely made with knowledge and for the purpose of
cheating appellant and obtaining an excessive price for the
land, and were relied upon by appellant to his injury, if
they were representations of a material fact, they were suf-
ficient to present a defense or claim for rescission.

In the case of *Rauh* v. *Waterman* (1902), 29 Ind. App.
344, 350, the following rule, to be observed in such cases, is
laid down: ''The logical and just test is found in the stand-
ard of a reasonable man's action under the same conditions,
modified, of course, by particular facts rendering the de-
frauded person unable to use such degree of care for his
own protection.''

In the case of *Jones* v. *Hathaway* (1881), 77 Ind. 14, ap-
pellants leased lands to appellees, which were fifteen miles
away, and represented that said lands were not subject to
overflow from an adjacent river.   This was untrue and known
to be untrue by appellants, but the falsity was unknown to
appellee when made.   The court in discussing this point
uses this language: ''The representations were as to mat-
ters of fact, on which the appellees had the right to rely;
and their truth was negatived in clear and explicit terms.
Certainly, the appellees were under no obligation to go
upon the demised lands and examine or inquire into the
truth or falsity of the appellants' representations.   *Taylor* v.
*Fletcher* [1860], 15 Ind. 80.   Upon this point, in the case of
*Mead* v. *Bunn* [1865], 32 N. Y. 275, the court said that it is
a 'mistaken assumption, that a false representation by one of
the parties to a contract puts the other on inquiry as to its
truth.   Every contracting party has an absolute right to rely
on the express statement of an existing fact, the truth of
which is known to the opposite party, and unknown to him,
as the basis of a mutual engagement; and he is under no

obligation to investigate and verify statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith.'" To the same effect are the following cases: *Manley* v. *Felty* (1896), 146 Ind. 194; *Union Cent. Life Ins. Co.* v. *Huyck* (1892), 5 Ind. App. 474; *Kramer* v. *Williamson* (1893), 135 Ind. 655; *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Bloomer* v. *Gray* (1894), 10 Ind. App. 326.

Of course there are particular cases by which the foregoing rule may be varied or held not to apply; but it appears, from the numerous cases we have examined, to be

5. applicable in cases like the present, where there is a direct charge of purposeful cheating. It appears to us to be an equitable rule. While every one should be diligent and alert in a trade, and should not be lured into a bad bargain by expressions of opinion, we can see no reason why he should not be protected in his confidence in his fellowmen and in his consequent belief in a direct statement of a fact. And we can see no reason in either equity or good conscience, why one who utters a known falsehood for the purpose of imposing upon the credulity of another, and thereby obtains an advantage to the other's injury, should be permitted to profit thereby. Surely he has no just ground of complaint if a court withholds from him the profits of such dealing and restores it to the one thus defrauded.

The next question for our consideration is whether representations that the soil was very productive, was deep, rich, black soil, are representations of fact or merely ex-

6. pressions of opinion. The terms, rich soil, very productive, deep, black soil, when used in describing real estate, have certain definite meanings. "Rich" is de-

7. fined in this connection as fertile, fruitful, producing or yielding abundantly; as rich soil, etc., of great price or money value; abounding in desirable or effective qualities or elements; of superior quality, opposed to poor. Century Dict. Yielding large returns, productive or fertile,

fruitful, as rich soil or land.    It is the opposite of poor. Webster's Dict.

It is hardly necessary to cite these definitions, as they are matters of common knowledge, understood by everyone; and, in our opinion, the representations that the soil is 6.    rich, that it is fertile, that it is very productive, are statements of facts, unless qualified in some manner that would indicate that only an opinion or estimate was intended.    It has been held in this State that such representations may be representations of facts.    *Harris* v. *Mc-Murray* (1864), 23 Ind. 9.    The descriptive terms used were material, directly affecting the value of the land.    *Harris* v. *McMurray, supra; Norris* v. *Tharp* (1878), 65 Ind. 47.

For the foregoing reasons, we hold that the second paragraph of answer and the counterclaim were sufficient to entitle appellant to the relief asked, and the demurrers thereto should have been overruled.

Judgment reversed, with instructions to overrule the demurrers to said paragraphs, and for further proceedings not inconsistent with this opinion.