SECURITY TRUST COMPANY ET AL. *v.* O'HAIR.

[No. 15,029. Filed October 15, 1935. Rehearing denied February 5, 1936. Transfer denied December 16, 1936.]

*Roemler, Chamberlain & Rust,* for appellants.

*Z. E. Keller, White & Jones* and *Archie Kahl,* for appellee.

KIME, J.—Appellee filed a complaint charging appellants, together with Bascom O'Hair, Alex Case and Charles O. Dodson, with conspiracy to perpetrate a fraud upon appellee and asked damages. To this complaint the appellants filed separate motions to strike out

a part of the complaint, which motions were overruled. The appellee then filed an amended complaint alleging that the above named parties conspired to perpetrate a fraud upon appellee, by inducing him to purchase from said Case and Bascom O'Hair, fifty shares of worthless common stock of the Marion County Sand and Gravel Company of Indianapolis. The complaint was filed after the death of Dodson and no service was had upon Case. At the time of the alleged transactions appellee's brother, Bascom, was president, Case was secretary-treasurer.

The complaint alleges that appellant with their co-defendants below falsely promised that if appellee would pay off a note for $3,000.00, with interest of $67.50, owing by the gravel company to appellant, Security Trust Company, then past due, and upon which Case, Bascom O'Hair and Dodson were endorsers and liable, and would cancel obligations from the said gravel company to appellee, in the sum of $985.75, and would further loan and advance to said gravel company $269.25, in all totaling, as they claimed, $4,222.50, said Case and Bascom O'Hair would sell and assign to appellee fifty shares of the capital stock of the gravel company, and in addition to which Case would deliver to appellee as trustee, to secure the repayment to appellee of said total of $4,222.50 by Case or the gravel company, fifty additional shares of the same stock, and that if neither Case nor the gravel company repaid to appellee said sum, then said appellee was to become the absolute owner of such additional shares put up by Case; that the defendants below in furtherance of the alleged conspiracy, falsely represented to appellee that the gravel company was a sound and solvent business and that its stock with a par value of $100.00 per share was worth $400.00 per share; that such representations were false and that appellee was in ignorance of their

falsity, believed them to be true and relied upon them; that in so relying upon such false statements appellee did advance, for the use of the gravel company, and cancelled such sums as are heretofore enumerated, and accepted in payment therefor the fifty shares of stock referred to together with the additional fifty shares as trustee. To this amended complaint the appellants filed separate motions to strike out parts thereof, which motions were overruled.

Appellants then filed answer in general denial to appellee's amended complaint. It was upon the amended complaint and the general denial that the cause went to trial by jury. At the close of all the evidence appellants asked that the court direct a verdict in their favor. This request was overruled and the jury returned a verdict for appellee against appellants and Bascom O'Hair awarding appellee damages in the sum of $7,500.00 and judgment for such amount was entered against appellants and Bascom O'Hair.

Appellants filed their separate and several motion for a new trial, which motion was overruled and this appeal followed. The error properly presented is the overruling of the motion for a new trial. The reasons or grounds discussed are that (1) the verdict of the jury is not sustained by sufficient evidence, (2) the verdict of the jury is contrary to law, and (3) the damages assessed are excessive.

The undisputed evidence discloses that at the time of the stock transaction herein sued on appellee was a man fifty-four years of age; that he lived in the city of Indianapolis where he had resided for the past ten or twelve years; that prior to that time he resided in Putnam County, Indiana, where he was a farmer; that he also was in the contracting business; that he constructed gravel roads in Putnam County; that on moving to Indianapolis he continued in the contracting busi-

ness doing cement work; that he built a road through Broad Ripple involving $116,000.00; that he looked after the financial affairs connected with it; that he looked after the financial affairs of the various contracts he had; that some of the other contracts handled by him were the Spring Mill Road from the Canal to 75th Street; the Spring Mill Road and the extension between the Haverstick Hill and sidewalks all over the city of Indianapolis; and that he also built bridges on the Spring Mill Road.

That appellee knew the gravel plant, knew where it was, had been over it, had been in the office and had seen the gravel equipment and that he knew practically how much land the gravel company owned. That his brother, Bascom, was president of the company at the time of the stock transaction and that he and his brother were on good terms; that he knew the Security Trust Company would not renew the $3,000.00 note it held against the company and that the president of the bank told appellee, at the time he told him that the bank was insisting that the note be paid, that the plant was worth $60,000.00 to $70,000.00 and that the stock of the gravel company was worth $400.00 or $500.00 per share.

That in February and March, 1929, being prior to the stock transaction herein sued on, appellee loaned to the gravel company approximately $1,900.00 on the Southport job, the contract for which belonged to the gravel company; that from February 25, 1929, to April 6, 1929, he loaned the gravel company a total of $2,-655.00; that before paying off the Security Trust Company note he signed the agreement in reference to the stock and that approximately thirty days elapsed from the time he first talked to the president of the bank and the date he purchased the stock.

Appellee was a business man of ability, as above disclosed, and had actual knowledge of the poor financial

condition of the gravel company by reason of the fact that the gravel company had to borrow approximately $1,900.00 from appellee to complete the $5,000.00 Southport job, and for the further reason that the credit of the company was not sufficient to get an extension of a $3,000.00 note owing by it to the bank, yet with all this actual knowledge appellee testified that he relied upon the statements of the president of the bank that the stock of the gravel company, or the par value of $100.00 per share, was worth $400.00 or $500.00 per share and that the assets of that company were worth $60,000.00 to $70,000.00. The belief of such fantastic statements on the part of the appellee indicates that he was not diligent and closed his eyes to existing facts of which he had actual knowledge. There can be no recovery for misrepresentations where the hearer had ample reason to doubt their truth. 12 R. C. L. 372, §124. *Frenzel* v. *Miller* (1871), 37 Ind. 1, 17; *Manley* v. *Felty* (1896), 146 Ind. 194, 45 N. E. 74. It is clear that appellee had knowledge and notice of the company's poor financial condition and as a business man, having the capacity to contract, knew that the stock of any company in such financial condition could not be worth such amount as the bank president stated. It is incredible that appellee relied on the alleged statements and was induced by them to purchase the stock when he had such actual knowledge of the company's poor financial condition.

Appellants and appellee were strangers to each other. No fiduciary relation existed between them and they were dealing at arm's length "and in such cases, the general rule is that statements of value are regarded as mere expressions of opinion." *Shade* v. *Creviston* (1883), 93 Ind. 591. See also *Blotz* v. *O'Connor* (1909), 45 Ind. App. 178, 90 N. E. 496, and cases cited. Both had the same opportunities for inves-

tigation and there is nothing disclosed by the record that either party was prevented from making an investigation. In fact appellee considered this stock transaction for about four weeks. As a matter of fact the appellee had a better chance of investigation as his brother, who was president of the gravel company, and he were on good terms. As above disclosed, appellee was put on notice, by the fact that he was lending the company money to carry out pending contracts and that the bank would not renew or extend the note of $3,000.00, that there was something wrong with the company's finances. This knowledge imposed upon appellee a need for careful inquiry. " 'If a party blindly trust where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *volenti non fit injuria*'." *Anderson Foundry, etc.* v. *Myers* (1896), 15 Ind. App. 385, 390, 44 N. E. 193; *Merchants National Bank* v. *Nees* (1916), 62 Ind. App. 290, 112 N. E. 904.

Paraphrasing the above quotation to fit the facts in the case at bar we hold that when both parties are dealing at arm's length and one party, in spite of the facts well known to him, deliberately ignores such facts and chooses to believe statements to the contrary, he closes his eyes to the truth and deliberately takes a chance. It then can not be said that he was injured in law. All that can be said is that he gambled and lost.

The verdict of the jury is not sustained by sufficient evidence and is contrary to law. The court erred in overruling the motion for a new trial, therefore, the judgment of the Hendricks Circuit Court is reversed with instructions to grant appellants' motion for a new trial.