Geri **WHEATCRAFT**, Appellant–Petitioner,

v.

Charles **WHEATCRAFT**, Appellee–Respondent.

No. 41A04–0406–CV–344.

Court of Appeals of Indiana.

March 31, 2005.

David M. Seiter, Strodtman & Seiter, Cumberland, IN, Attorney for Appellant.

Kelli J. Young, The Nice Law Firm, Indianapolis, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Geri Wheatcraft ("Wife") appeals from three of the trial court's orders in this dissolution proceeding. Wife presents the following issues for our review:

1. Whether the trial court abused its discretion when it denied Wife's motion to set aside the dissolution decree under Indiana Trial Rule 60(B).

2. Whether the trial court abused its discretion when it denied Wife's mo-

tion for discovery under Indiana Trial Rule 60(D).

3. Whether the trial court abused its discretion when it granted Charles Wheatcraft's ("Husband's") petition for attorney's fees.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married in 1979, and they separated in 2002.[1] Wife filed a petition for dissolution of marriage on June 18, 2002. On November 21, 2002, the trial court ordered that the parties attend mediation "as soon as discovery allowed." Appellant's App. at 33. Wife submitted interrogatories to Husband in September 2002, but Husband had not responded to those discovery requests by the time of the parties' mediation on October 29, 2003. In the interrogatories, Wife sought information regarding the identity and value of Husband's assets, including the value of any right, title, or interest in any business entity.

Husband co-owns a painting company ("the company") with his brother, and Wife worked for the company for approximately fifteen years until the parties' separation. The company's assets include a Dodge Viper, which both Husband and his brother drive, trucks, a pole barn, and an office located on the grounds of the parties' marital residence. Husband's net annual income from the company is approximately $100,000.

During the parties' mediation on October 29, 2002, Husband presented Wife with a list of the parties' assets and their corresponding valuations ("list of assets"). Husband had hired an appraiser to valuate his interest in the company, which was listed as $43,021.68. Husband did not have a written report from the appraiser, but stated that the amount shown was based on the appraisal. The list of assets showed that the parties' net marital assets totaled $454,391.98.

The parties' mediation lasted approximately five and one-half hours. During that time, Wife contested Husband's valuations for her jewelry and other items of personal property. As a result, Husband agreed to reduce the valuations for those items. But Wife did not request an opportunity to conduct an independent valuation of the company, nor did she contest the valuation of the company indicated on the list of assets. Wife questioned why the Dodge Viper was not listed as an asset, and Husband explained that it was included in the valuation of the company. At the conclusion of the mediation, the parties signed a settlement agreement which provides in relevant part:

Come[ ] now the parties in person [and] by counsel and agree to the following:

1. That the Wife shall take the following property:

a. the personal property in her possession and the asterisked items on Exhibit B. Husband will [ ]move these items into the garage [and] the daughter can be present when Wife arrives to pick up....

b. the Bank One–One Group Investment—Husband IRA/mutual fund ($13,705 as of 10/29/03) and Lincoln Husband IRA ($3[,]270.82 as of 10/29/03) both of which shall be rolled over into an IRA account of Wife so it is a tax-free transfer.

c. Jackson National Life IRA/annuity John Hancock—IRA (cashed in 4/03) Wife's checking [and] savings—Bank One John Hancock variable life ins[urance] Wife's 2001 Ford 250—

---

1. The parties have a daughter, who is emancipated.

Wife assumes debt [and] hold[s] Husband harmless[.]

d. Husband [to] pay Wife $155,000 cash within 7 days of Decree of Dissolution[.]

e. Husband shall pay Wife's COBRA health insurance premium of $467.77 for twelve months following Decree of Dissolution[.]

2. That the Husband shall take the following property:

a. All other property listed on exhibit[s] A [and] B not previously set off to Wife as stated above.

b. Any debt associated with the property Husband receives in Ex. A [and] hold Wife harmless.

c. Any personal property in Husband's possession not previously set off to Wife.

\* \* \*

6. That Husband's attorney shall prepare the final Court pleadings to finalize the dissolution upon the terms [and] conditions of this agreement.

Appellant's App. at 37–39.

Pursuant to the terms of the settlement agreement, Husband's attorney prepared the final settlement agreement, waiver of final hearing, and other documents requiring Wife's signature to present to the dissolution court along with the proposed dissolution decree. Husband sent those documents to Wife's attorney, but he did not receive any response. Then, in December 2003, Wife hired a new attorney, David Gillman, who informed Husband's attorney that Wife would not sign the documents because she "did not feel comfortable with the settlement reached at mediation." *Id.* at 35.

Accordingly, Husband filed a petition to enforce the mediated agreement. The dissolution court entered an order enforcing the mediated agreement and executed a final dissolution decree on January 23, 2004. Wife timely filed a motion to set aside the dissolution decree under Trial Rule 60(B) and a "motion to reconsider" the order enforcing the mediated settlement agreement. In her brief in support of those motions, Wife alleged that Husband had committed fraud in inducing her to sign the settlement agreement and that she had signed the agreement under duress. Wife also moved the court to stay the execution of the settlement agreement and requested that she be able to conduct discovery under Trial Rule 60(D).

On April 16, 2004, at the conclusion of a hearing on Wife's 60(D) motion, the dissolution court took the matter under advisement. Specifically, the court advised the parties that it would rule on that motion following the hearing on Wife's 60(B) motion to set aside the decree. In her Trial Rule 60(D) motion, Wife sought leave to conduct additional discovery to determine the value of the company. Because Wife's 60(B) motion turned on her allegation that Husband had misrepresented the value of the company, the court advised the parties that for purposes of the 60(B) hearing, it would assume that the company had a valuation "one hundred times more" than that represented by Husband. Transcript of April 16 hearing at 28.

At the hearing on Wife's 60(B) motion, Wife asserted that she was coerced into signing the settlement agreement at the parties' mediation. In support of that contention, Wife testified in relevant part as follows:

Q: Did you feel at that point that you had to sign something before the day was over?

A: I mean I knew it wasn't going anywhere. I just knew that no one was going to budge.

\* \* \*

Q: Well, were you in fear that he might hurt you if you didn't sign?

A: Yes.

\* \* \*

Q: And when you indicated that you were beaten down, I think your words were intimidated and coerced, was that by Mr. Greg Nolan, the mediator?

A: It was by the thoughts of what [Husband] has done to me my whole life and Mr. Nolan just relayed what [Husband] was wanting.

Q: Let me stop you there. And when he ... and what did he say that he wanted? He wanted to have this finished today.

A: He wanted this to be (INAUDIBLE).

Q: And you took that as a threat?

A: Um, yes I did.

Transcript of May 17, 2004 hearing at 28–29, 39–40. In addition, regarding the valuation of the company, Wife testified in relevant part as follows:

Q: Did [your attorney] gather any values of any of the marital assets?

A: Not that I know of. The discovery was never done. I don't really know.

Q: Did he ever tell you ... did he ever prepare anything or tell you what he thought the marital estate was valued at?

A: No.

\* \* \*

Q: Did you ever ask your attorney to value the business?

A: Yes.

Q: Did he do that?

A: No.

Q: Did you ever ask your attorney to gather documentation about the assets of the marriage?

A: Yes.

Q: Did he do that?

A: No.

\* \* \*

Q: Did you ask the mediator or your attorney to look at documentation confirming any of [the valuations of the assets during the mediation]?

A: I didn't know I was allowed to ask for more than what was presented that day.

Q: Did you talk to your attorney about things you were confused about in the mediation?

A: Yes.

Q: Did he offer you any guidance?

A: Not really, he didn't have anything of his own to (INAUDIBLE).

Q: He didn't bring anything with him that he had ....

A: No.

*Id.* at 45–46, 50–51.

Following the hearing, the dissolution court denied Wife's 60(B) and 60(D) motions and awarded Husband's petition for attorney's fees. In its order, the court found and concluded in relevant part:

1. Regarding Petitioner's Motion for Discovery of the Value of Wheatcraft Painting: the Petitioner argues that her Trial Rule 60(B)(3) Motion filed on January 27, 2004 requires the Court to allow discovery, specifically, mandates that her Motion for Order Allowing Parties to Obtain Discovery and for Evaluation of Wheatcraft Painting filed on February 27, 2004 be granted. On April 16, 2004, this Court held a hearing regarding this discovery issue and found that the same should be denied "prior to hearing" on Petitioner's Trial Rule 60

Motion. At the conclusion of said hearing, the Court found there was insufficient evidence to grant the Motion and left open the possibility that after the hearing on Petitioner's Trial Rule 60 Motion that the Court may reconsider and grant said request before ruling on the Trial Rule 60 Motion. While the language of Trial Rule 60(D) "may be read as requiring the trial court to allow discovery for the purposes of a motion for relief from judgment, it remains that discovery is an issue within the sound discretion of the trial court." *Benjamin v. Benjamin*, 798 N.E.2d 881, 887 (Ind. Ct.App.2003) quoting *Keystone Square Shopping Center Co. v. Marsh Super Market, Inc.*, 459 N.E.2d 420, 425 (Ind. Ct.App.1984). The Court FINDS and CONCLUDES that based on the evidence at the hearings on April 16 and May 17, 2004 *there is not sufficient evidence to warrant the Court granting Petitioner's discovery requests.* Based upon subsequent findings in this order, *the Court CONCLUDES that Petitioner's discovery requests unduly serve to delay the enforcement of the Decree, posing a substantial burden financially on the marital estate by delaying the distribution of the assets as set forth in the Decree.* Further, said requests serve as an annoyance on the Respondent who appeared fully prepared at the mediation, negotiated in good faith at the mediation, and acted in reliance on the negotiated terms since it was executed on October [29], 2003 by both parties and their attorneys.

2. Regarding Petitioner's Motion to Set Aside Decree: The Court FINDS Petitioner's Motion is a Trial Rule 60(B)(3) Motion, that it was filed timely, and that Respondent was given fair notice of the hearing on said Motion, which hearing was conducted on May 17, 2004. The hearing on May 17, 2004 lasted ap-

proximately two (2) hours. At the beginning of said hearing, as well as at the conclusion of the discovery hearing on April 16, 2004, the Judge advised Petitioner and her counsel that said hearing was an evidentiary hearing on Petitioner's Motion to Set Aside Decree. The Court has considered the evidence and CONCLUDES that Petitioner's Motion is without merit. The Court FINDS that having had the opportunity to judge the credibility of the witnesses and weigh the evidence, that *the Petitioner was not under such duress or coercion at the mediation held herein on October [29], 2003 that she was forced into executing the mediated agreement, nor was there any fraud, misconduct or misrepresentation committed by Respondent to induce the Petitioner into signing the Mediation Agreement.* The Court is aware that "notwithstanding the importance of ensuring the enforceability of agreements that result from mediation, other goals are also important including: facilitating agreements that result from mutual assent, achieving complete resolution of disputes, and mediating clear understandings that the parties are less likely to dispute or challenge." *Spencer v. Spencer*, 752 N.E.2d 661 (Ind.Ct.App. 2001). Unlike the parties in *Spencer*, the Petitioner and Respondent herein signed the Mediation Agreement and the Petitioner herein knew that said agreement contained the terms they agreed to at the mediation.... In this case, based on the weight of the evidence and the credibility of the witnesses, *the Court FINDS that this is more of a case of Petitioner changing her mind about the agreement after she signed it than anything else.* The Petitioner and Respondent attended a lengthy mediation, mediated the issues with counsel representing both parties,

and reached a written agreement that completely resolved the issues pending before the mediation, and that the parties knew at the time would be a resolution to all issues. *There is no credible evidence of coercion, duress or fraud* as alleged by Petitioner and the Mediated Settlement Agreement and Decree should not be set aside.

Appellant's App. at 10–11 (emphases added). The dissolution court also awarded Husband attorney's fees. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Trial Rule 60(B)

Wife first contends that the dissolution court abused its discretion when it denied her motion to set aside the final decree under Trial Rule 60(B)(3). We review the grant or denial of a Trial Rule 60(B) motion for relief from judgment under an abuse of discretion standard. *Ross v. Bachkurinskiy*, 770 N.E.2d 389, 392 (Ind.Ct.App.2002). The trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.* On appeal, we will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or is contrary to law. *Packer v. State*, 777 N.E.2d 733, 738 (Ind.Ct.App.2002).

Trial Rule 60(B) provides in relevant part:

[T]he court may relieve a party ... from an entry of ... [a] final order ... for the following reasons:

\*     \*     \*

(3) fraud ..., misrepresentation, or other misconduct of an adverse party[.]

On appeal, Wife alleges that Husband committed actual fraud or, in the alternative, constructive fraud when he represented the valuation of the company.[2] The elements of actual fraud which a plaintiff must prove are: (1) a material misrepresentation of a past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind.1992). The elements of constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind.Ct.App.1992).

It is well settled that fraud requires a misrepresentation of a material fact. *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind.Ct.App. 2004), *trans. denied.* Expressions of opinion cannot be the basis for an action in fraud. *Id.* " '[T]he general rule is that statements of value are regarded as mere expressions of opinion.' " *Security Trust Co. v. O'Hair*, 103 Ind.App. 56, 197 N.E. 694, 696 (1935) (quoting *Shade v. Crevi-*

---

**2.** Wife does not challenge the dissolution court's findings on the issues of coercion or duress.

*ston,* 93 Ind. 591 (1884)). More specifically, this court has held that an appraisal is a matter of opinion, and is not, therefore, actionable under a theory of fraud. *Kreighbaum v. First Nat'l Bank & Trust,* 776 N.E.2d 413, 421 (Ind.Ct.App.2002). Accordingly, we hold that in this case, Wife cannot show actionable fraud based upon Husband's representation regarding the company's valuation.[3]

▬ Still, Wife contends that she had an absolute right to rely on Husband's valuation because his attorney represented that the valuation was accurate. In support of that contention, Wife cites to our supreme court's opinion in *Fire Ins. Exchange v. Bell,* 643 N.E.2d 310, 313 (Ind. 1994), wherein the court held that a party has a "right to rely upon any material misrepresentations" made by opposing counsel. But Wife ignores a critical difference between *Bell* and the instant case, namely, that the representation made in *Bell* concerned the policy limits in an insurance contract, which is a representation of fact. Here, again, Husband's counsel only represented the valuation of the company based on an appraisal, which is an opinion. *See Kreighbaum,* 776 N.E.2d at 421. As such, Wife did not have a right to rely on Husband's counsel's representation under the rule enunciated in *Bell.*

▬ Wife also asserts that she reasonably relied on Husband's valuation because he had superior knowledge of the company's net worth. While Indiana law does not recognize a presumption of superiority or dominance by one spouse over another, a spouse is not precluded from proving the superior knowledge or status of the other spouse to justify reliance. *Ehle v. Ehle,* 737 N.E.2d 429, 435 (Ind.Ct. App.2000). Here, Husband presented evidence that Wife had worked for the company for fifteen years and had knowledge of the company's assets, which include a Dodge Viper, trucks, and real estate. Further, Wife knew that the company was hired for approximately 400 paint jobs annually. We will not reweigh the evidence. We cannot say that the dissolution court erred when it rejected Wife's contention that Husband had superior knowledge justifying her reliance on his valuation of the company. And, regardless, we have already determined that Wife has not asserted a claim for actionable fraud. We hold that the dissolution court did not abuse its discretion when it denied Wife's motion to set aside the dissolution decree.

### Issue Two: Discovery

▬ Wife also contends that the dissolution court abused its discretion

3. Regardless, Wife testified that she had asked her attorney to have the company valued, but that he had not followed through on that request prior to the parties' mediation. That evidence supports a reasonable inference that Wife did not intend to rely on Husband's valuation of the company.

The reliance element of fraud has two prongs: the fact of reliance and the right of reliance. *Roberts v. Agricredit Acceptance Corp.,* 764 N.E.2d 776, 779 (Ind.Ct.App.2002). With regard to the fact of reliance, this court has observed that:

[w]hen both parties are dealing at arm's length and one party, in spite of the facts well known to him, deliberately ignores such facts and chooses to believe state-

ments to the contrary, he closes his eyes to the truth and deliberately takes a chance. It then cannot be said that he was injured in law. All that can be said is that he gambled and lost.

*Plymale v. Upright,* 419 N.E.2d 756, 761 (Ind. Ct.App.1981) (quoting *Security Trust Co. v. O'Hair,* 103 Ind.App. 56, 197 N.E. 694, 696–97 (1935)). We note that there is evidence that Husband and Wife were dealing at arm's length and that Wife deliberately ignored facts regarding the company's assets well known to her at the time she signed the settlement agreement. As such, the dissolution court could have reasonably concluded that Wife did not rely on Husband's valuation of the company. *See id.*

when it denied her motion to conduct discovery under Trial Rule 60(D), which provides:

> In passing upon a motion allowed by subdivision (B) of this rule the court *shall* hear any pertinent evidence, allow new parties to be served with summons, *allow discovery,* grant relief as provided under Rule 59 or otherwise as permitted by subdivision (B) of this rule.

(Emphases added). In *Benjamin v. Benjamin,* 798 N.E.2d 881, 889–90 (Ind.Ct. App.2003), this court noted that "[w]hile the language of the rule may be read as requiring the trial court to allow discovery for purposes of a motion for relief from judgment, it remains that discovery is an issue within the sound discretion of the trial court." We observed that "[l]imitations are necessarily placed upon discovery to prevent it from becoming a tool of oppression and harassment. We will reverse a trial court's grant or denial of a discovery request for an abuse of discretion." *Id.* at 890.

Wife acknowledges the holding in *Benjamin,* but asks that we "overturn" that decision. Brief of Appellant at 17. Wife asserts that in *Benjamin,* we "ignored" our supreme court's holding in *Sholes v. Sholes,* 760 N.E.2d 156, 159 (Ind.2001). *Id.* We cannot agree.

In *Sholes,* our supreme court observed that Indiana case law "presumptively treats 'shall' as mandatory . . . 'unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning.'" 760 N.E.2d at 159 (quoting *Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 947 (Ind.1999) (citation omitted)). In essence, in *Benjamin,* we held that "shall" can not be read as mandatory in the context of Trial Rule 60(D) because such an interpretation conflicts with the well-settled rule of law that

discovery is subject to the trial court's discretion. 798 N.E.2d at 889–90. Because that holding is consistent with *Sholes,* we decline Wife's invitation to "overturn" our decision in *Benjamin.*

▮ Wife contends, in the alternative, that the trial court abused its discretion when it denied her motion for discovery. But Wife has not demonstrated how she was harmed thereby. Wife's motion sought only permission to conduct an appraisal of the company to enable Wife "to present evidence of the undervaluation of the business." Appellant's App. at 73. But such evidence would not have altered the dissolution court's denial of Wife's motion to set aside the decree because the court assumed for the purposes of that motion that the company was grossly undervalued. As such, Wife cannot show that the dissolution court abused its discretion when it denied her motion for discovery.

### Issue Three: Attorney's Fees

Finally, Wife asserts that the dissolution court abused its discretion when it awarded Husband attorney's fees. But Wife's sole contention on this issue is that "[s]ince the court reached the wrong conclusion concerning the wife's right to rely on husband's misrepresentations, it penalized the wrong party for the misconduct." Brief of Appellant at 19. Because we have held that the dissolution court did not abuse its discretion when it denied Wife's motion to set aside the decree, Wife's contention on this issue is without merit.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.